No. 21,281.

C. C. EPP, *Appellant,* v. CHARLES R. HINTON et al. (CLARENCE SPOONER et al., *Appellees*).

SYLLABUS BY THE COURT.

1. ATTORNEYS' LIEN—*Enforcement—No Formal Pleadings Required.* An application to enforce a lien of attorneys upon the proceeds of a judgment obtained by their services may be made in the case wherein the judgment was rendered, without formal pleadings, as is provided in section 485 of the General Statutes of 1915.

2. SAME—*Neither Party Entitled to Jury.*  Being a special statutory proceeding of an equitable nature, neither party is entitled to a trial by jury as a matter of right.

3. SAME—*Value of Legal Services—Hypothetical Questions.*  A party may not complain of a ruling on an objection to a hypothetical question as to the value of legal services, which was not made when the evidence was offered.

4. SAME—*Value of Services—Expert Testimony—Personal Knowledge of Court.*  While the court should give due consideration to the opinions of experts and the evidence of other witnesses as to the value of legal services, it is not controlled by such evidence, as the court itself is an expert as to the value of attorneys' services and may apply its own knowledge and professional experience in determining the value of the services rendered.

5. SAME—*Elements Entering into Value of Legal Services.*  The elements entering into the value of legal services are ordinarily the character and importance of the litigation, the time and labor necessarily involved, the expense incurred in the performance of the services, the results obtained, and, where such is the agreement, that the recovery of compensation depends upon the contingency of the success achieved.

6. SAME—*Findings and Judgment Sustained.*  The testimony examined, and held to be sufficient to sustain the findings and judgment of the trial court.

Appeal from Harvey district court; FRANK F. PRIGG, judge. Opinion filed February 9, 1918.  Affirmed.

*J. I. Sheppard, James G. Sheppard,* and *Kate Sheppard,* all of Fort Scott, for the appellant.

*Clarence Spooner, Ezra Branine,* and *Harry W. Hart,* all of Newton, *pro se.*

The opinion of the court was delivered by

JOHNSTON, C. J.: This appeal is the result of a proceeding in the trial court to determine the amount of compensation due the attorneys of the plaintiff, C. C. Epp, under their lien filed in the action. From the trial court's order awarding an attorney fee of $4,000 plaintiff appeals.

The litigation of which this proceeding is the result began in 1910, when appellant engaged Clarence Spooner to commence a suit against the defendants, Hinton, Bane, and Gould, to rescind a contract on the ground of fraud, or in case a rescission could not be had, to recover damages in lieu thereof. The contract concerned the purchase by appellant of certain Colorado land for $49,000. After the suit was commenced the firm of Branine & Hart, at Spooner's request and with the knowledge and consent of appellant, became associated with Spooner in the conduct of the case. At the first trial judgment was rendered in appellant's favor for $16,108, and the defendants appealed to the supreme court (*Epp v. Hinton,* 91 Kan. 513, 138 Pac. 576; same case on rehearing, 91 Kan. 919, 139 Pac. 379), where the findings and judgment of the trial court were affirmed in every respect except that of the measure of damages; and upon that issue alone a new trial was ordered. The second trial resulted in a judgment for appellant for $15,427.67, which was affirmed on appeal. (*Epp v. Hinton,* 98 Kan. 238, 157 Pac. 1183.)

While the second appeal was pending, Spooner, who was conducting a foreclosure action in Butler county, learned from his connection with that suit that Bane, one of the defendants herein, claimed some interest in the mortgaged land, and as a result of Spooner's management of that action Bane filed an answer in which he alleged his ownership of an interest in the land. A transcript of appellant's judgment in this action was then filed in Butler county, and an answer and cross petition was filed in his behalf in the foreclosure action, claiming a second lien on the property by virtue of the judgment filed in Butler county. The land was sold at foreclosure sale for

$25,000, and after the satisfaction of the first lien, over $17,000 remained to be applied on appellant's judgment, and the money was sent to the Harvey county court to be held there pending the final disposition of appellant's action then on appeal.

A notice of the attorney's lien was served on the attorneys of the defendants in 1914; a second notice was served in June, 1916; and on June 30, 1916, a copy of the motion used on July 5, 1916, in this proceeding, was served personally on appellant. The motion set forth a general outline of the litigation and the services rendered therein by the appellees. At the commencement of the proceeding, appellant moved the court that a jury be impaneled to try the facts, and the motion was denied. He also objected to the introduction of any evidence for the same reason, and on the further grounds that there were no pleadings defining the issues, and that he had not been served with sufficient notice of the proceedings.

A large amount of evidence was introduced on the hearing of the motion, much of it conflicting in character. Some of the points in controversy were: whether there was a definite contract as to compensation, or whether the matter was to remain contingent upon the outcome of the litigation; whether or not the appellees continued as the attorneys for appellant throughout the whole litigation; and what services were rendered by other attorneys engaged by appellant. It appears that prior to the second trial appellant engaged C. W. Taylor to act for him, but Taylor testified that it was upon the distinct understanding that the appellees should also remain in the case. It also appears that while appellees were looking after appellant's interests in the Butler county proceeding, the latter engaged W. A. Huxman to represent him and insisted upon his following a different course from that outlined by the appellees. In answer to a hypothetical question which was in form a complete outline of the litigation, showing the different steps taken in its course, several attorneys testified as to what would be a reasonable compensation for appellees' services, with the understanding that they took part and were personally present in all the proceedings and that their compensation was wholly contingent upon a recovery. The question was objected to by appellant for the reason that it did not specify the work done by each of the firms seeking to hold the appellant liable. The

court then stated that the record should be made to show that the appellees were seeking to recover a total sum for their joint services. It was the opinion of the witnesses that the fee should be from one-fourth to one-half of the judgment. The court heard a large amount of evidence as to the services the appellees performed, as well as those performed by other attorneys engaged by appellant, and adjudged that $4,000 was a proper allowance.

Appellant contends that under section 279 of the civil code he was entitled to a jury trial. That section applies to ordinary actions for the recovery of money or property and not to statutory proceedings brought to determine the amount of a charging lien for services rendered by attorneys in obtaining a judgment. The appellees had given notice of their lien and had proceeded by motion, without formal pleadings, in the manner prescribed in the statute. (Gen. Stat. 1915, §§ 484, 485.) In a way, attorneys who secure a judgment are regarded as equitable assignees of the judgment, and the action of the court in the proceeding is somewhat similar to the distribution of a fund which has been brought into a court of equity in pursuance of its judgment. (*In re Gillaspie,* 190 Fed. 88; 6 C. J. 766.) The proceeding is special and summary in character, and, under the statute, a jury trial is not authorized. It is argued that if the statute is so interpreted it must be deemed to be a violation of the constitutional guaranty of the right of trial by a jury. In *Tatlow v. Bacon,* 101 Kan. 26, 165 Pac. 835, it was said:

"The constitutional guaranty that 'the right of trial by jury shall be inviolate' . . . has no application to proceedings of this character and does not extend beyond cases where such right existed at the common law, but only applies to cases that were triable by jury before the constitution was adopted." (p. 30.)

In *Swarz v. Ramala,* 63 Kan. 633, 66 Pac. 649, it was expressly held that "in chancery and in statutory proceedings the legislature has ample power to dispense with trial by jury." (p. 636.)

(See, also, *Kimball and others v. Connor et al.,* 3 Kan. 410; *In re Burrows, Petitioner,* 33 Kan. 675, 7 Pac. 148; *Wheeler v. Caldwell,* 68 Kan. 776, 75 Pac. 1031; *The State v. Linderholm,* 84 Kan. 603, 114 Pac. 857.)

Epp v. Hinton.

It is next contended that the court erred in receiving opinions of witnesses based upon a hypothetical question which, it is argued, assumed that all of the legal services mentioned in the question had been performed by the appellees, whereas other attorneys had assisted in the litigation. The objection raised when the evidence was introduced was that it did not specify the work done by Spooner separately from that done by Branine & Hart. No reference was made to the fact that attorneys other than appellees had performed any part of the services. Even if the objection had been made that is now raised, the action of the court could not be regarded as erroneous. It is clear that the court, in determining the amount of the fee, took into consideration only the services rendered by the appellees themselves. When the evidence in question was offered and appellees had stated that they were only asking a recovery for their joint services, the court remarked: "Let the record show, as stated by the attorneys who have filed the application in this case, that they are seeking to recover the total sum for the joint service of the attorneys Clarence Spooner and the firm of Branine & Hart." In the question asked, the history of the litigation and the steps taken in the course of it, together with the results obtained, were recited, and with the understanding that the appellees took part in the proceedings from first to last, and that their compensation depended on the contingency of a recovery of a judgment, witnesses were asked what would be a reasonable fee for their services. As the litigation had been conducted before the court, with the exception of the proceeding in Butler county, and he had observed the part taken by the appellees in conducting it, he was familiar with the services rendered, for which compensation was asked. Other testimony had been introduced as well to show the work performed by appellees. The value of their services, as well as that performed by the other attorneys called into the case, was in evidence before him, and hence he was able to determine from all the evidence what compensation the appellees were entitled to have for the services actually performed by them. Even if the hypothetical question should have been made more definite in relation to the services rendered, the court was not bound by the opinion of the experts, given in answer to the question, nor by the testimony

given by other witnesses, but could apply his own knowledge of the value of the services that had been rendered. (*Bentley v. Brown,* 37 Kan. 14, 14 Pac. 434; *Noftzger v. Moffett,* 63 Kan. 354, 65 Pac. 670; *Larabee v. Railway Co.,* 85 Kan. 214, 116 Pac. 901.)

The lowest value placed by the experts on the services rendered greatly exceeded the amount awarded to the appellees, and it is very clear from the statements of the court and the course of the trial that the allowance made by the court did not include the value of services rendered by attorneys other than appellees.

It is finally claimed that the compensation fixed is excessive. The elements which entered into the value of the legal services are: the nature and importance of the litigation, the labor and time necessarily involved therein, the expenses incurred in following the case from court to court, the results obtained, and the fact that their compensation depended upon the contingency of success. Having in view the character and importance of the litigation, the services shown to have been performed by the appellees as well as the marked success attained by them, together with the fact that compensation for the services was contingent upon the success of the litigation, the amount awarded by the court appears to be quite reasonable.

Some question is raised as to whether the fee was not fixed as the result of a conversation between Spooner and the appellant about the time the action was begun. On being asked what the cost of the litigation would probably be it was replied that it would possibly cost him from $500 to $1,000. There is a dispute as to the statements made at that time, but the evidence tends to show that no agreement was made between the parties as to the amount of the fee. At that time the scope and difficulties of the litigation were not apparent, and the subsequent conversations and dealings between the parties indicated that no agreement had been made as to the amount of the fee, and, also, that no compensation was to be paid except on the contingency of the success of the litigation.

The judgment is affirmed.