No. 44,392

THE URBAN RENEWAL AGENCY OF THE WICHITA, KANSAS, METRO-
POLITAN AREA, *Appellant,* v. ELIZABETH TATE, *Appellee.*

(414 P. 2d 28)

Opinion filed May 7, 1966.

*Ronald H. Rogg,* of Wichita, argued the cause, and *John R. Blair, Don
Matlack* and *Richard V. Foote,* all of Wichita, were with him on the brief for
the appellant.

*Russell Schultz,* of Wichita, argued the cause, and *Larry Kirby,* also of
Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a condemnation action.

The underlying question is whether the trial court erred in giv-
ing an instruction to the jury which the appellant alleges to be a
directed verdict for the landowner.

In the year 1958 the Urban Renewal Agency of the Wichita,
Kansas, Metropolitan Area (appellant) by and through its agents
and employees, informed Elizabeth Tate (appellee), the landowner
herein, that it was going to take her property as a part of an urban
renewal project. It was not, however, until December, 1961, when
appraisers for the Urban Renewal Agency came by to look at the
landowner's property. The date of the taking by the Urban Re-
newal Agency was February 8, 1962.

Subsequently the landowner appealed from the award of the

appraisers, who had been appointed by the court in the condemnation action. The sole issue to be tried to the jury in the condemnation appeal was that of determining the market value of the land and the improvements condemned.

When the condemnation appeal came on for trial in the district court it was tried to a jury with only two witnesses, one witness by the landowner, herself, and one witness by the Urban Renewal Agency.

In her testimony the landowner generally described the real estate and the improvements on it. Her testimony revealed that she purchased four lots in October, 1954, at a price of $200 each. After the purchase she spent some four months cleaning them up, removing trash and debris. She had ten loads of dirt hauled in at a cost of approximately $40, and moved a house trailer on the location which cost $650. She further improved the lots by putting down a water well which cost approximately $100, constructed a summer house containing 689 square feet, and planted flowers, shrubbery and trees. She also commenced the construction of a large house near the front of the lots in 1957. The dimensions of this house were 28 by 32 feet. She testified that she had invested approximately $800 to $1,000 in this house for materials. She also constructed a rock garden at a total cost to her of $200. She further testified she spent a total of 6,300 hours of her own labor improving the premises. An objection was sustained by the trial court when she was asked to place a value on her labor.

The only utility available to the premises was electricity.

The landowner was permitted to testify as to the market value of the premises as improved, which included the house trailer condemned by the Urban Renewal Agency. She said the market value in her opinion was between $8,000 and $9,000.

The witness called by the Urban Renewal Agency was Lisle Morris, who stated his profession to be that of a real estate appraiser. In placing a value upon the premises condemned, he testified as follows:

"Q. Mr. Morris, do you have an opinion as to the value of the property on February 8, 1962, the market value of the property?

"A. I would have an opinion assuming that there had been no additional work done on that east portion.

"Q. And what would your opinion be?

. . . . . . . . . . . . . .

"A. All right, sir. In my opinion the value of the property assuming that it was in essentially the same condition that it was when I made my original inspection, it is my opinion it had a fair market value of $3,200.00."

The foregoing opinion testimony of Mr. Morris was qualified by the fact that the only time he had occasion to view and appraise the property of the landowner (described as Lots 50, 51, 52 and 53 in Block 19 of Orienta Park Addition to Wichita, Kansas) was in February, 1961. This was one year before the property was taken by condemnation.

The landowner testified she was continually making improvements to the property and building onto both the summer cottage and the house which she was building on the front of the lots. This was necessitated by the fact that she could not sell her property because it was known for several years the Urban Renewal Agency was going to take it; that she had to have a place to live; and that the city health authorities required her to make additions and improvements to comply with the city health laws. Her testimony in substance was that the property had been improved considerably by additional building since the appraisal was made by Mr. Morris.

The fact that there had been considerable change in the premises is confirmed by the testimony of Mr. Morris. When he was shown photographs of the premises made on the date of the taking, he said he did not recognize the premises from some of these photos as he remembered it. On some photos he pointed to additions made to the buildings on the premises, which were not there when he made his appraisal.

The landowner moved to strike all of the testimony of Morris relating to the market value of the property taken because it was purely speculative and too remote.

The trial court overruled the objection and after counsel agreed upon the instructions to be given the court recessed until 9:30 the next morning. Before convening the next morning, the trial court added the instruction here in controversy. It reads in pertinent part:

"You are instructed that the only evidence you have before you as to the market value of the landowner's property on the agreed date of taking, February 8, 1962, is that evidence of the landowner.

"The landowner's evidence as to the market value of her property on the date of taking is that it was worth between $8,000.00 and $9,000.00.

"You are instructed that you will retire to your jury room and return a verdict in favor of the landowner. You will, under the evidence in this case, return a verdict placing the market value of the landowner's property at a figure of not less than $8,000.00 and not more than $9,000.00."

This instruction came as a surprise to counsel for the respective parties inasmuch as the trial court the previous evening had over-ruled the landowner's motion to strike the testimony of Mr. Morris. Counsel for the Urban Renewal Agency was, however, permitted to make an objection for the record.

The giving of the foregoing instruction by the trial court, upon its own motion, was in substance a reversal of its previous ruling on the landowner's motion to strike the testimony of Mr. Morris. We shall proceed upon the assumption that the testimony of Mr. Morris was properly stricken from the record.

The question therefor presented is whether under these circumstances it can be said the giving of the foregoing instruction was erroneous.

The Urban Renewal Agency contends the foregoing instruction of the court, directing a verdict, superseded other instructions given by the court and denied the Agency the right to have the market value of the property decided by the jury on proper instructions.

It must be conceded a landowner is a competent witness to testify as to the value of his property. (*Randle v. Kansas Turnpike Authority*, 181 Kan. 416, 312 P. 2d 235; and *Taylor v. State Highway Commission*, 182 Kan. 397, 320 P. 2d 832.)

It should also be noted that the value of a parcel of land taken by eminent domain is usually a matter of opinion, and may be proved by opinion evidence. (*Mai v. City of Garden City*, 177 Kan. 179, 277 P. 2d 636; and see, *Cline v. Kansas Gas & Electric Company*, 182 Kan. 155, 318 P. 2d 1000.)

The general current of authorities is that in all condemnation cases compensation should be ascertained and assessed as of the time the property is taken. (*C. B. U. P. Rld. Co. v. Andrews*, 26 Kan. 702; *Wier v. St. L., Ft. S. & W. Rld. Co.*, 40 Kan. 130, 19 Pac. 316; *Emery v. Riverside Drainage District*, 132 Kan. 98, 294 Pac. 888; and *Steck v. City of Wichita*, 179 Kan. 305, 295 P. 2d 1068.)

It is the contention of the landowner that had the jury brought in a verdict for less than $8,000, the court would have been required to grant a new trial on the ground the verdict was not in conformity with the evidence.

Counsel for the landowner argue the only evidence as to the value of the property on the date of the taking was that of the landowner; that the only amount which the jury could legally find was a value somewhere between $8,000 and $9,000; and that the court was obligated to so direct the jury.

The landowner relies upon *Love v. Common School District*, 192 Kan. 780, 391 P. 2d 152, calling our attention to the fact that this court there reversed an award which was $500 under the minimum estimated value of the property of the landowner's witnesses, where there was no admissible testimony given by the condemner as to the value of the property as of the date of the taking.

The legal import of the decision in the *Love* case does not support the landowner. There an employee in the county assessor's office was permitted to give his opinion of the "market value" of property, based upon records on file in his office compiled by an appraisal firm of Lincoln, Nebraska, three years prior to the date of the taking. It was the erroneous admission of this evidence that was the basis for the reversal.

In an action to determine the value of property condemned, the opinions of witnesses as to the value of such property at the time it is condemned will not be deemed conclusive, but the jury may consider such opinions in connection with all the other testimony in the case, and then determine for itself from all the testimony the value of such property. Stated in other words, it may be said the jury is not bound by the opinion testimony of a witness. The jury is entitled to take into consideration the facts testified to by the witness as to the cost, quality and condition of the property, and come to a different opinion as to its value. The jury is to decide what weight, if any, shall be given to the opinion or evidence of the expert witness, or to the opinion of a nonprofessional witness. The members of the jury are not bound by such evidence, and may exercise their own judgment based upon experience in deciding the question touching which opinion testimony was given. (*C. K. & W. Rld. Co. v. Drake*, 46 Kan. 568, 26 Pac. 1039.)

A similar question arose in *Shouse v. Consolidated Flour Mills Co.*, 128 Kan. 174, 277 Pac. 54, where opinion testimony concerned the value of legal services. There opinion testimony was given that the value of the legal services in question was not less than $12,000 nor more than $15,000. The plaintiffs claimed only $12,000 in their petition, and the jury was instructed to assess the amount of the plaintiffs' recovery at $12,000, less $500 which had already been advanced by the defendant. This instruction was held to be erroneous on the ground that a court or jury trying the question of the value of legal services was not bound to accept as conclusive the opinions given by attorneys respecting such value.

A more recent case touching the subject is *Denman v. Colorado Interstate Gas Co.,* 179 Kan. 180, 294 P. 2d 207. There the court said:

"The owner, cross-appellant, next argues the answers to special questions were not supported by the evidence. He argues there was no evidence as to the exact amounts found by the jury while there was expert testimony as to other amounts. He argues in effect under such circumstances the jury was bound to answer the questions in accordance with the expert testimony. Expert testimony uncontradicted is sufficient to support a verdict, but the jury is not bound by it." (p. 183.)

In *Smith v. Tri-County Light & Power Co.,* 120 Kan. 123, 241 Pac. 1090, the applicable rule was discussed by the court as follows:

"Plaintiff raises one other question. He moved for a new trial upon the amount of damages only. This was overruled. Upon this point his contention is that all of the evidence before the jury fixed the value of the barn burned at $2,000, while the jury found its value to be $900. It is true that each witness who placed a value upon the barn in his testimony, placed such value at $2,000, but that is not all of the evidence before the jury as to the value of the barn. Its description was given in detail. Its size, the material of which it was built, the fact that it had been built seventeen years, all furnished ground upon which the jury could base a judgment as to its value, even though no witness had stated a specific sum as to the value. While the jury might have found a different value on the barn, they had evidence to sustain the finding which was made." (p. 128.)

In the instant case the instruction of the trial court, in effect, said that the opinion of the landowner was the only evidence of market value in the case. This was erroneous. The landowner testified quite extensively with respect to the improvements on the property which the jury should have been permitted to consider.

Counsel for the landowner argue that since the jury brought in a verdict, which was only $50 less than the maximum amount which the court set in its instructions, the jury must have considered all the evidence which constituted the basis of the landowner's opinion. Therefore, it is argued, even if the instruction is held to be erroneous, it did not result in prejudicial error.

Whether the jury considered all the evidence in the case and would have decided as it did without the erroneous instruction is purely speculative. Under the circumstances we cannot say the erroneous instruction did not prejudice the appellant when the jury determined the market value of the property condemned.

The judgment of the lower court is reversed with directions to grant a new trial.

FROMME, J., not participating.