No. 45,083

In the Matter of the Condemnation Appeal of Jack M. Humphries and Virginia L. Humphries, *Appellants*, v. The State Highway Commission of Kansas, *Appellee*.

(442 P. 2d 475)

Opinion filed June 8, 1968.

*Clinton C. Marker*, of Topeka, argued the cause, and *Terence S. Leek*, of Topeka, was with him on the brief for appellants.

*James D. Waugh*, of Topeka, argued the cause, and *David Craig, Robert L. Webb, Ralph W. Oman, Philip E. Buzick, William B. McElhenny, James L. Grimes, Jr., Donald J. Horttor, Terry L. Bullock*, all of Topeka, and *John H. Morse*, assistant attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

Fatzer, J.: The landowners have appealed from an award of a jury in a eminent domain proceeding and contend the district court erred in the admission of evidence, and that the verdict was grossly inadequate and contrary to the evidence.

In early 1962, the landowners purchased a short "80" consisting of

76 acres for $13,500. The property was unimproved and is located approximately eight miles south of Topeka on the east side of U. S. Highway 75. In February, 1962, the landowners caused extensive improvements to be made on the front or west side of the property, consisting of a livestock sales barn and holding pens. The sales barn has a seating capacity of 350 persons and a restaurant for customers. In September, 1962, the first livestock sale was held and sales were thereafter regularly conducted.

On September 20, 1965, the State Highway Commission condemned a 9½ acre controlled access right-of-way easement for highway purposes across the landowners' property, leaving 45 acres east of the right-of-way and 22½ acres west of it. The 22½-acre tract contained all the sale barn improvements, none of which were taken. Access to the back 45-acre tract will be provided the landowners by means of a tunnel or underpass on a township road bordering the south edge of the property.

In the original condemnation proceeding, the appraisers appointed by the court awarded the landowners $15,500. The landowners appealed the award to the district court and the case was tried to a jury which was permitted to view the premises, and it returned a verdict in favor of the landowners in the amount of $23,400.

Prior to the commencement of the trial, a conference was held in the judge's chambers. The judge and counsel for the respective parties were present. A part of the conference revolved around the issue whether the court would permit evidence of the cost of the land when purchased in 1962. When the conference concluded, the court stated:

". . . I just feel that under the circumstances here when we talk about $13,000 (sic) which included the same land that now has improvements in 1965 I don't think it has any relevancy in the case and that will be the order. I'll let you inquire whether or not they considered it; I'm not going to allow anybody to go into the price paid for it."

Landowner Jack Humphries testified on direct examination that the improvements cost $81,895.43 in 1962, and could be replaced for $125,000; that the total value of the property just prior to the taking was $192,500 and that the value of the property remaining after the taking was $37,000. While being cross-examined by counsel for the commission, the following dialogue occurred:

"Q. You said that the selling price of the property along the highway is about $600 an acre in that area?

"A. I think that would be real close.
"Q. When did you buy this property?
"A. In 1962.
"Q. Did it sell for that much?
"A. No sir, it did not.
"Q. How much did it sell for?
"MR. SNYDER: I am going to object in that it has been determined—
"THE COURT: I think as far as his cost it wouldn't be a comparable sale, but since he has gone into the investment of the land, I am going to permit him to answer this but it would not be a comparable sale, because of the improvements that have been added.
"MR. SNYDER: All right, if we can have instructions on that.
"THE COURT: It is not a comparable sale, but he may go into it, since Mr. Humphries did open the investment that he has there.
"Q. What did you pay for this land, Mr. Humphries?
"A. I paid $13,500.00.
"Q. That was between 75 and 80 acres there?
"A. The entire thing."

The landowners contend the district court erred in overruling their objection to the price paid for the land in 1962. The landowners' testimony with respect to the improvements made was proper and relevant since they were made at a time which was not too remote to the condemnation in 1965, and the investment testified to by Mr. Humphries was of some probative value to establish market value. In *Urban Renewal Agency v. Tate,* 196 Kan. 654, 414 P. 2d 28, it was said:

"The jury is entitled to take into consideration the facts testified to by the witness as to the cost, quality and condition of the property . . ." (l. c. 658.)

The ultimate fact to be established by the line of questioning pursued by counsel for the commission was not the value of improvements alone, but the value of the *entire property,* which included the *improvements* and the *land* itself. In establishing just compensation, it was necessary that the evidence establish the value of the *entire property* before the taking. (K. S. A. 26-513 [c].) The investment in the *entire property* was a proper factor to be considered in arriving at the value. Since the landowner introduced evidence of his investment in the improvements, it was proper on cross-examination for the commission to show his investment in the land in order to present the whole picture. To illustrate, the landowner testified that the improved land had a value of $192,500 and that the improvements had a replacement value of $125,000 prior to condemnation. Applying the cost approach formula of valuation

of improved property which he used, the difference between these two figures would be $67,500 which obviously represented the value of the raw 76 acres, or approximately $890 per acre. It was proper in testing the landowner's credibility to show he paid $13,500, or about $180 per acre, three years prior to the condemnation for the unimproved land.

The rule is well settled that it is proper cross-examination to inquire into matters which were the subject of the witness' direct testimony. This court has, as have other American courts, recognized the rule that cross-examination must be responsive to testimony given on direct examination or material or relevant thereto. (*State, ex rel., v. Creager,* 97 Kan. 334, 340, 155 Pac. 29; *State v. Harris,* 103 Kan. 347, 350, 175 Pac. 153; *Maechtlen v. Clapp,* 121 Kan. 777, 783, 250 Pac. 303; *State v. Roth,* 200 Kan. 677, 438 P. 2d 58.) In *Schuster, Toole & Co. v. Stout & Wingert,* 30 Kan. 529, 2 Pac. 642, it was said:

". . . Generally speaking, a cross-examination should be permitted as to all matters developed in the direct examination . . ." (l. c. 531.)

See, also, *Lawder v. Henderson,* 36 Kan. 754, 14 Pac. 164; *City of Atchison v. Rose,* 43 Kan. 605, 23 Pac. 561; *Reeves v. Brown,* 80 Kan. 292, 102 Pac. 840, and *Seifert v. Schaible,* 81 Kan. 323, 105 Pac. 529. The rule is stated in 58 Am. Jur., Witnesses, § 632, p. 352, as follows:

"The application of the American rule is sometimes attended with considerable difficulty, because it is not always easy to determine what is within and what is without the scope of the direct examination. Therefore, much is necessarily left to the sound discretion of the trial court in determining what is proper cross-examination, this being especially true where both sides of the case stand in part upon common territory, or are founded in part upon the same or cognate facts. Generally speaking, however, when the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts which constitute a unity, or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut, or make clearer the facts testified to in chief by the witness on cross-examination."

The appellant cites *Love v. Common School District,* 192 Kan. 780, 391 P. 2d 152, as authority for the rule that the value of property two or three years prior to taking is not competent to establish value as of the date of the taking. The rule is sound and we do not

depart from it, but it does not dispose of the question before the court. In *Love* a county employee was the sole witness used by the condemnor for the taking of property in 1961. He was permitted to testify, over objection, that the 1958 "market value" placed on the property for ad valorem tax purposes by an appraising firm of Lincoln, Nebraska, was a certain amount. The witness merely read from cards on file in the county assessor's office, which he had not prepared. He had never owned or sold property in the vicinity, and did not know of his own knowledge what the market value of the property would be. This court held the testimony was hearsay and that the *appraisers' value* of the property in 1958 was not competent to establish value in 1961. However, *sale price,* as opposed to an appraiser's opinion of *value* of property for tax purposes, if not remote in time, is a proper inquiry on cross-examination.

We think the following reasoning of this court concerning cross-examination of expert witnesses applies with equal logic to other witnesses giving testimony in the form of opinion as to value. In *Regnier Builders, Inc., v. Lindwood School District No. 1,* 189 Kan. 360, 369 P. 2d 316, it was said:

". . . The means of testing the competency of expert witnesses in condemnation proceedings is by cross-examination. Only by permitting their cross-examination to the fullest extent can a jury be in a position to determine the probative value of their testimony . . . Great latitude is necessarily indulged in order that the intelligence of a witness, his power of discernment and his capacity to form a correct judgment may be submitted to the jury so it may have an opportunity to determine the value of his testimony . . ." (l. c. 362.)

As indicated, the landowner on direct examination introduced the subject of his investment in the property, but he gave only half of the story. It was proper for the commission on cross-examination to produce the missing portion so the jury would have before it the entire investment in the property as of the date of the taking. The ruling of the district court was not improper.

It should here be stated that besides Mr. Humphries' testimony, the landowners produced Mr. Kenneth Newell, an eminently qualified appraiser, rancher and manufacturer, who testified that in his opinion the total value of the property before the taking was $180,000; that the highway right-of-way would destroy the continuity of the entire tract for sale barn purposes, and that in his opinion the property after the taking was worth $75,000, a difference of $105,000. It should further be stated the evidence of the landowners, in-

cluding that of Mr. Newell, was that the highest and best use for the property was a sale barn operation. The two expert witnesses for the commission likewise testified that the highest and best use of the property was a sale barn operation.

The landowners contend the district court erred in permitting one of the commission's expert witnesses to testify that the property had more than one highest and best use. The commission's witness, William Reed, after having been qualified as an expert appraisal witness, testified that the highest and best use of the front portion of the property adjacent to Highway 75—approximately 22½ acres—was for a livestock sale barn operation, and that the highest and best use of the back 45 acres was for agricultural purposes. The landowners' objection to this testimony was overruled.

The landowners' complaint is not clear. The witness did not place separate values on the front and back portions of the tract. He placed one value on the entire property as is contemplated by K. S. A. 26-513 (c). He testified that the reasonable market value of the property immediately prior to the taking was $95,000, and immediately after the taking it would be worth $79,500, or a difference of $15,500. That one property under one ownership might have more than one use has not heretofore been questioned by this court. In *Mai v. City of Garden City*, 177 Kan. 179, 277 P. 2d 636, it was said:

". . . The fact that it [the property] has been used for one purpose only does not prevent him from showing its availability for other appropriate uses and its value for such uses . . ." (l. c. 182.)

It appears the landowners' true complaint is not that Mr. Reed designated more than one use for the property, but that he did not agree with the landowners' theory of use in its entirety. An expert witness of a party to an eminent domain proceeding is entitled to his own opinion as to use and as to valuation. (*Diefenbach v. State Highway Commission*, 195 Kan. 445, 450, 407 P. 2d 228.) In *The County of Cook v. Holland*, 3 Ill. 2d 36, 119 N. E. 2d 760, it was said:

". . . It has long been the rule that parties to a condemnation proceeding have the right to adopt their own theory as to the highest and best use of the land taken and each may introduce evidence without being bound by the theory of the other . . ." (l. c. 41.)

The court instructed the jury that in arriving at the value of the land and interest taken, it should consider all possible uses to which the land could have been put, including the best and most advan-

tageous use to which the property was reasonably adaptable; that uses which may be considered must have been so reasonably probable as to have had an effect on the value of the land at the time of the taking. ( *Luecke v. State Highway Commission,* 186 Kan. 584, 352 P. 2d 454; PIK 11.11.) We are of the opinion the landowners have not made it affirmatively appear they were prejudiced by the testimony.

At the close of the evidence, a conference was held by the court and counsel in chambers, out of the hearing of the jury. The commission prepared and offered into evidence Exhibit No. 10, which was a statistical summary of the testimony of the "before and after" values of the land taken. Counsel for the landowners objected to the exhibit, but stated no specific grounds for his objection. The court overruled the objection, and admitted the summary. The exhibit reads:

| Witness | Before Taking | After Taking | Difference |
|---|---|---|---|
| Jack M. Humphries | 192,500.00 | 37,000.00 | 155,500.00 |
| Kenneth Newell | 180,000.00 | 75,000.00 | 105,000.00 |
| Robert Taggart | 98,400.00 | 81,650.00 | 16,750.00 |
| William Reed | 95,000.00 | 79,500.00 | 15,500.00 |

A summary of the testimony of "before and after" values of property taken in an eminent domain proceeding was before this court in *Kansas State Highway Commission v. Roepke,* 200 Kan. 660, 438 P. 2d 122. In that case, counsel for both parties agreed to the submission of a similar exhibit. Here, the landowners object, and contend it was prejudicial to their rights for the jury to consider the exhibit during its deliberation. However, no attempt is made in the landowners' brief to set forth any showing of prejudice. It is not contended that the amounts set forth in the summary do not accurately reflect the testimony of each witness, or that the calculations of the "before and after" values were not mathematically correct.

A chart summarizing valuations by witnesses is set forth in P. I. K. 11.16. It is said the chart is not an instruction to the jury, but is a form for a convenient summary of testimony that often is difficult for members of a jury to remember. It is further said the summary may be submitted to the jury by mutual consent of counsel.

As indicated, counsel for the landowners stated no specific grounds for his objection. K. S. A. 60-404 provides, in substance, that no verdict shall be set aside, or judgment based thereon be

reversed, because of erroneous admission of evidence, unless the record reveals that an objection specifying the grounds thereof, was timely interposed. This court has consistently adhered to the rule that alleged errors in the admission of evidence will not be reviewed on appeal in the absence of timely objection made thereto, or, if objection is made, unless the specific grounds thereof are clearly stated. (*State v. Lee,* 197 Kan. 463, 466, 419 P. 2d 927, cert. den. 386 U. S. 925, 17 L. Ed. 2d 797, 87 S. Ct. 900, rehearing denied 386 U. S. 978, 18 L. Ed. 2d 142, 87 S. Ct. 1170; *State v. Freeman,* 195 Kan. 561, 564, 408 P. 2d 612, cert. den. 384 U. S. 1025, 16 L. Ed. 2d 1030, 86 S. Ct. 1981; *Grohusky v. Atlas Assurance Co.,* 195 Kan. 626, 629, 408 P. 2d 697; *State v. Jolly,* 196 Kan. 56, 58, 410 P. 2d 267; *State v. Gates,* 196 Kan. 216, 410 P. 2d 264; *Borggren v. Liebling,* 198 Kan. 161, 165, 422 P. 2d 884.)

An exhibit admitted in evidence during a trial is one thing, and a summary of the testimony of "before and after" values of property taken in a condemnation proceeding is another. However, we think the purpose of K. S. A. 60-404 should be applicable to the latter as well as to the former, and, where as here, there is no basis for the objection stated in the record, the claim of error will not be considered on appellate review.

It is lastly contended the verdict is contrary to the evidence in that the amount awarded to the landowners is inadequate, in view of the severity and permanency of the damages incurred. As indicated by the statistical chart, there was a wide divergence between the opinions and theories of the landowners' witnesses and those of the commission. The two witnesses for the landowners testified as to valuation and both stated that after the condemnation, the remaining portion would not be usable as a livestock auction market, notwithstanding the fact that the landowner was left with all of the improvements situated on a 22½-acre tract. Witnesses for the commission were of the opinion that the landowners' livestock auction market, being one of only two sale barns in Kansas situated on property larger than 20 acres, would not be destroyed, but would be injured to some extent. One of the commission's witnesses—Mr. Taggart—testified that the value of the property immediately prior to the taking was $98,400, and Mr. Newell, the landowners' expert witness, testified that the value of the property remaining immediately after the taking was $75,000. The difference between those two figures is $23,400, and, coincidentally, that was the amount

of the jury's verdict. In short, the jury reconciled conflicting testimony as to values and theories of the parties and arrived at a result which did not have the specific statement of any one witness to support it. Members of a jury are not bound by any evidence of an expert witness, especially in view of the fact that they have viewed the premises. This question was before the court in *Kansas State Highway Commission v. Roepke*, supra, and it was said:

"We do not understand the law to be that in a case of this kind a verdict may not be lower than the *difference* testified to by any *one* witness. Just as here, there usually is considerable variance in the testimony as to 'before and after' value. A jury is entitled to consider all of the evidence—not just that of one witness. Here the evidence of the 'before' value ranged from $29,500 to $40,000. The jury found it to be $32,000. The evidence of the 'after' value ranged from $24,525 to $31,400. The jury found it to be $27,330. Both figures found by the jury were *within* the evidence—and the verdict represented the difference . . ." (l. c. 664.)

Likewise, in *Diefenbach v. State Highway Commission*, supra, it was said:

". . . The amount reached by the jury in its verdict was well within the range of the testimony of the expert witnesses. The testimony of the witnesses as to the total award due the landowners ranged from $46,705.00 to $75,115.50. The jury's general verdict of $49,000.00 was well within that range." (l. c. 447.)

It is clearly evident the jury's verdict was consistent with the evidence and supported by it. The judgment is affirmed.