No. 47,224

City of Wichita, Kansas, a municipal corporation, *Appellant,* v. H. L. Chapman and Myrtle M. Chapman, *Appellees.*

(521 P. 2d 589)

Opinion filed April 22, 1974.

*Phillip Mellor,* of Wichita, argued the cause, and *Jonh Dekker,* city attorney, was with him on the brief for the appellant.

*Frank McMaster,* of McMaster & Smith, of Wichita, argued the cause, and *Stanford Smith,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in an eminent domain proceeding by the City of Wichita (plaintiff-appellant) wherein it acquired a right-of-way for federal highway purposes on land owned by H. L. and Myrtle M. Chapman (defendants-appellees).

The appellant asserts trial errors on appeal and challenges an allowance of attorneys' fees to the landowners' attorneys pursuant to K. S. A. 26-509 as part of the court costs.

The City of Wichita in its initial attempt to acquire the landowners' property offered approximately $23,000.00, which the Chapmans declined to accept. Thereafter the city filed its petition in the district court of Sedgwick County to acquire the Chapman property by eminent domain. The court appointed appraisers filed an award to the value of the property in the sum of $45,000.00. Being dissatisfied with the award the city took an appeal and demanded that a jury try the issue of just compensation for the taking.

At the trial the city produced three duly qualified real estate experts, Herman Oakes, Jesse Johnson, and Paul Brown, who expressed their opinions as to the value of the Chapmans' property.

Mr. Oakes stated that in his opinion the fair market value of the property was $25,000.00.

Mr. Johnson appraised the subject property at $25,600.00. In arriving at that figure, Johnson did not attach any value to the improvements on the Chapmans' property because he felt their value was "only to provide some income until such time that the property could be redeveloped commercially." He relied upon six other sales of property which he considered comparable to the subject property. (One transaction he considered as a comparable is referred to as the Sutoris sale and will be discussed in conjunction with Mr. Brown's testimony.)

On cross-examination Johnson stated three buildings were located upon the subject property; a commercial building, a house and a

garage. The commercial building measured 1,536 square feet. Johnson was unable to state the replacement cost of the building without referring to information he did not have with him on the witness stand. He described the house as a forty-five year old, two-story dwelling containing approximately 1,495 square feet. He estimated the replacement building costs at $12.00 per square foot for the ground floor and $6.50 to $7.00 per square foot for the second floor. The garage would accommodate two cars and contained 351 square feet. Its replacement cost was approximately $4.50 per square foot. He also stated that while the average purchaser in the market place would buy the subject property for future redevelopment he would not deny that as far as the Chapmans were concerned the highest and best use of the property was the way they were using it.

The city's only other witness in the condemnation proceeding was Mr. Brown. On direct examination the witness stated he had participated with Johnson throughout the process of appraising the Chapmans' property, and if he was asked the same questions about the appraisal he would answer substantially the same as Johnson did.

As indicated in reviewing Johnson's testimony above, he and Brown used six sales they considered comparable to determine the fair market value of the subject property as of May 10, 1970. One of those comparables involved the sale of land referred to as the Sutoris sale. Brown had previously considered the Sutoris sale in an appraisal report made for the City of Wichita and the State Highway Commission on August 15, 1969. In that report, the Sutoris sale was utilized by Brown as a comparable sale in appraising the Bulger Cadillac-Oldsmobile agency property in a condemnation proceeding.

On cross-examination Mr. Frank McMaster, counsel for the Chapmans, used Brown's 1969 report to illustrate that the Sutoris sale as made in the 1969 appraisal conflicted with the analysis made with respect to the Chapmans' property. Apparently, Brown had used higher figures in reporting the Sutoris sale in the 1969 report than he used in his report concerning the instant proceeding. Cross-examination had the obvious effect of discrediting the witness. Brown's 1969 report was not offered into evidence by the Chapmans, however, on redirect examination the city had the entire report admitted.

According to Brown, he delivered copies of the 1969 report to the engineering department of the City of Wichita and the state and federal reviewers. Mr. Stanford Smith was special counsel representing the City of Wichita in the Bulger Cadillac-Oldsmobile condemnation and had access to Brown's report. Mr. Smith is the law partner of Frank McMaster and they served as co-counsel for the Chapmans. The city objected to the use of the 1969 report by the Chapmans' attorney as being unethical. The trial court allowed the Chapmans to use the 1969 report as a basis of cross-examination and stated the question of the conduct of the Chapmans' co-counsel "will have to be decided by an appropriate tribunal where that matter comes on within their jurisdiction."

Three persons testified on behalf of the Chapmans: H. L. Chapman, one of the landowners, Nestor Weigand and W. A. Mullens, two real estate experts.

According to Chapman, his family acquired the subject property in 1916. He had lived there from that date with his sister and mother until the condemnation. He had operated a Schwinn bicycle shop and a lawn mower service in the commercial building on the premises. However, he lost the Schwinn franchise because he could not borrow money to expand the facilities as required and use the subject property as collateral because of the city's pending condemnation program. He further testified that three years prior to the condemnation he had raised part of the $38,000.00 necessary for an operation on his brother by mortgaging the subject property. He owed $10,030.69 on the mortgage at the time the property was condemned and it had to be paid off by the condemnation award. Since the condemnation he has purchased a smaller home for $15,500.00 and also another shop premise. Since he and his family have moved his mother (98 years of age) has been ill, requiring full-time nursing, and wants to be taken "home."

In Chapman's opinion the subject property had a value of $75,-000.00. His opinion was based in part upon an offer he had received from Skelly Oil Company and on another sale of property in the vicinity from P. J. Fisher to the city. The city's objections to both the Skelly Oil offer and the Fisher sale were sustained by the trial court.

Nestor Weigand believed the highest and best use for the subject property would be some type of retail operation. In his opinion the subject property should be valued at $45,000.00. His appraisal did

not allocate any value to the three buildings on the property because a developer, utilizing the property at its highest and best use would have to remove them. Weigand did state, however, that the improvements might have been the highest and best use of the property as far as the Chapmans were concerned. The witness considered the subject property as a key property for a potential assemblage of the surrounding properties.

The Chapmans' other witness in the condemnation proceeding was W. A. Mullens. Mullens had been a real estate broker in Wichita for five years and prior to that time had spent eight years with Skelly Oil acquiring property for service station sites. He described the Chapmans' property as having a 130 foot frontage on Kellogg avenue, with an additional fifteen feet actual usage due to an adjacent alley, and $52^{33}/_{100}$ foot of frontage on Estelle Avenue. Mullens believed the highest and best use for the subject property would be as a service station; however, the subject property is not quite large enough so property to the north would have to be acquired to be used with it. At this point in Mullens' testimony the city was permitted to ask him questions on voir dire out of the presence of the jury. This examination disclosed that the witness' only opinion concerning the subject property was to value it in combination with other property to allow for building a service station. Mullens stated he could apportion the value of the subject property out of the assemblage, but the court sustained the city's objection on grounds that the property had to be valued singularly rather than in an assemblage with other property. The Chapmans did proffer Mullens' opinion that the highest and best use of the subject property would be an assemblage with other land, and its value in an assemblage would be $68,250.00. The court accepted the proffer but refused to allow the testimony to go before the jury. The appellee has not appealed from that ruling.

After all the evidence was introduced, and the instructions given, the jury deliberated, then returned a verdict for the Chapmans in the amount of $64,567.66. After considering evidence adduced at a hearing, the trial court allowed $13,500.00 as costs to be paid to the Chapmans "as and for their Attorneys' fee" pursuant to K. S. A. 26-509.

The appellant's first point on appeal is that there was no substantial, competent or credible evidence of value to support the jury's verdict. The highest value placed on the property by any

of the experts was $45,000.00; the verdict was for $64,567.66. The appellant states that only evidence tending to support the verdict was Mr. Chapman's testimony. It is contended that after the trial court sustained the appellant's objection to Mr. Chapman's testimony concerning the Skelly Oil offer and the Fisher land sale the only basis remaining for his testimony was emotional attachment, which should not support the jury's verdict (citing, *City of Wichita v. May's Company, Inc.,* 212 Kan. 153, 510 P. 2d 184). The appellant argues:

".  .  . [T]he jury is not entitled to disregard the testimony of experts and give weight to a wholly unsupported expression of opinion of value by a landowner whose testimony shows he has no rational basis to support his opinion, for to do so robs the jury's verdict of any rational basis.  .  .  ."

It is appellees' position that substantial evidence exists to support the amount of the jury's verdict. It is argued the experts' opinions did not include any value attributable to the improvements on the land and Chapman's did, so the jury could take that into consideration; any of Chapman's testimony based upon emotional attachment was received into evidence without objection by the appellant so that cannot be asserted for the first time on appeal; and in light of this court's prior decisions Chapman's testimony is competent evidence to support the verdict.

It is well settled a landowner is a competent witness to testify as to the value of his property. (*Urban Renewal Agency v. Tate,* 196 Kan. 654, 414 P. 2d 28; *Taylor v. State Highway Commission,* 182 Kan. 397, 320 P. 2d 832; *Randle v. Kansas Turnpike Authority,* 181 Kan. 416, 312 P. 2d 235; and *City of Wichita v. May's Company Inc.,* supra.)

In *City of Wichita v. May's Company Inc.,* supra, the court said:

".  .  . The thrust of the city's argument urges this court to limit the rule by requiring a landowner to qualify; that is, he must establish a foundation for his testimony. The foundation should consist of knowledge developed from a buying and selling of real estate or an acquaintanceship and familiarity with land values in the neighborhood. *The qualification of a landowner to testify as to the value of his land is not dependent on a showing of a knowledgeable background.* It is based on the presumption the landowner has acquired knowledge by virtue of his ownership. Lack of knowledge is subject to exposure by the condemning authority. *Regardless of what is disclosed, it does not affect the competency of the landowner to testify, but only the weight to be given to the testimony.*" (p. 155.) (Emphasis added.)

Under the above rule Mr. Chapman's testimony was competent, and the appellant had an opportunity to expose his lack of knowledge

concerning land values on cross-examination. The weight to be attached to all the testimony, including that of Mr. Chapman, was for the jury. The jury is not bound by the opinion testimony of expert witnesses, or to the opinion of a nonprofessional witness, and the jurors may exercise their own judgment based upon experience in deciding the question touching which opinion testimony was given. (*Urban Renewal Agency v. Tate,* supra, p. 658.)

The record does not disclose any objections were interposed by the appellant to Mr. Chapman's testimony, other than those relating to the Skelly Oil offer and the Fisher property sale. The verdict was approved by the trial court. We find no reason to disturb it; to do so would be to substitute our judgment for that of the trier of facts. (*Schamp v. The City of Wichita,* 160 Kan. 4, 159 P. 2d 402.)

It should be noted there was evidence from the various experts testifying in this case which gives support to Mr. Chapman's opinion. None of the experts allocated other than a minimal value for the improvements on the land, consisting of a two-story house, a commercial building, and a garage. However, the improvements had a value to Mr. Chapman as he used the property. He lived in the house with his mother and sister, and used the commercial building to house his bicycle and mower shop.

The next point asserted by the appellant is that misconduct of the appellees' counsel requires a new trial.

It is alleged Frank McMaster's use of Paul Brown's 1969 appraisal report for the Bulger Cadillac-Oldsmobile condemnation, which included an analysis of the Sutoris sale, violated Canon 4 of Supreme Court Rule No. 501 (211 Kan. lxxxvii).

Canon 4 provides:

"A Lawyer Should Preserve the Confidences and Secrets of a Client."

Disciplinary Rule 4-101 (A) defines "confidences" and "secrets" as follows:

" 'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client."

The appellant contends Brown's 1969 analysis of the Sutoris sale was its "secret" within the above definition.

To resolve the point a more thorough examination into the background of the 1969 appraisal is in order. In 1969 Stanford Smith

was employed as a special counsel to represent the City of Wichita in an action to condemn property owned by Bulger Cadillac-Oldsmobile. Paul Brown was employed as an expert witness on behalf of the city. Brown prepared an appraisal report, dated August 15, 1969, of the Bulger property, which included reference to a comparable sale known as the Sutoris sale. This report was delivered to Stanford Smith, the engineering department of the City of Wichita, the Kansas Highway Commission, the federal reviewers and counsel for the landowner, Bulger Cadillac-Oldsmobile. Brown's deposition was taken by the attorney representing Bulger Cadillac concerning his appraisal report. The Bulger case was ultimately settled before a trial took place, the Smith's employment terminated.

The appellees take the position that Brown's 1969 report cannot be regarded as the appellant's "secret," but, on the contrary, was public information in that it was given to city, state and federal agencies whose records are public. Also, a copy was given to the landowners' counsel.

It has long been the rule in Kansas that an attorney appearing against a party he has previously represented cannot, in forwarding the interests of his new client, used against his former client any knowledge or information acquired through his former connection. (*Purdy v. Ernst*, 93 Kan. 157, 143 Pac. 429.)

Assuming, without deciding, Brown's 1969 appraisal report would otherwise fall into the prohibitions of Canon 4, it does not do so in this case because its existence and contents were made available to various agencies and to opposing counsel. Such public exposure of the information negates its "secret" or "confidential" character. The appellant never intended for Brown's 1969 report to be "secret"; the purpose in having it prepared was for use in a condemnation proceeding.

In order for a communication from a client to his attorney to be confidential, and to impose upon the attorney the duty of not disclosing the same, it must be of a confidential character, and so regarded, at least by the client, at the time, and must relate to a matter which is in its nature private and properly the subject of confidential disclosure. (*Cranston v. Stewart*, 184 Kan. 99, 334 P. 2d 337; and *In re Elliott*, 73 Kan. 151, 84 Pac. 750.) This rule should also be applied to "secrets" within the meaning of Canon 4.

It has been held that an appraisal of real estate by one hired to perform such task is not a trade secret within the meaning of

K. S. A. 60-432, and the witness was not privileged to refuse to testify. ( *City of Wichita v. Jennings,* 199 Kan. 621, 433 P. 2d 351.)

It is also the general rule that an attorney may be compelled to produce papers belonging to his client where the knowledge of their existence and contents is accessible to others or the public. ( *Cranston v. Stewart,* supra.)

Under the circumstances it was proper for Mr. McMaster on cross-examination to inquire into the Sutoris sale which was relevant to the direct testimony of the expert witness Brown called on behalf of the appellant. ( *Humphries v. State Highway Commission,* 201 Kan. 544, 442 P. 2d 475.)

The appellant contends the trial court erred in allowing appellees attorney fees for the appeal from the appraisers' award because K. S. A. 26-509, which authorizes the allowance of attorney fees as costs in condemnation appeals under certain circumstances, was not in force when the appeal was taken by the appellant.

K. S. A. 26-509 was adopted by the legislature in 1972. (L. 1972, ch. 148, § 1.) The statute took effect upon the date of its publication in the statute book, July 1, 1972. It was signed by the governor on March 14, 1972. The appeal from the appraisers' award was perfected by the appellant on May 4, 1972, almost two months prior to the effective date of the statute. The date of the taking was May 10, 1972. The verdict was returned December 20, 1972. Hearings were held by the court on January 26, 1973, and February 23, 1973, after which the court allowed attorney fees of $13,500.00 for the appellees' counsel as costs under the statute.

The pertinent portion of K. S. A. 26-509 states:

". . . Whenever the plaintiff condemner shall appeal the award of court appointed appraisers, and the jury renders a verdict for the landowners in an amount greater than said appraisers' award, the court may allow as court costs an amount to be paid to the landowner's attorney as attorney fees."

The appellant contends the trial court's action results in an unlawful retrospective application of a statute which imposes a new and additional liability; that the statute is substantive in nature rather than procedural; and that the extent of appellant's potential liability was vested prior to the effective date of the statute.

The appellee contends the statute is procedural and was therefore properly applied to this case, even though it was pending prior to the effective date of the statute; that the legislature did not intend the statute to be applied prospectively only; and that

the attorney fees are part of the costs in the case and no party has any vested right to costs until after judgment.

While there appear to be no Kansas decisions regarding the retrospective application of cost statutes to pending actions, the general rule is stated in 20 Am. Jur. 2d, Costs, § 7 as follows:

"The law as it exists at the time of the judgment which terminates the action—the time at which the right to have costs taxed accrues—rather than the law as it existed at the time when the action was commenced, generally governs the question whether costs may be allowed in an action, as well as the determination of the method of their computation. Consequently, statutes either increasing or decreasing allowable costs, including attorneys' fees, are consistently applied to litigation pending when such statutes become effective, unless a contrary intent clearly appears from the statute. Inasmuch as a party has no vested right to costs until after a judgment has been rendered, the legislature may, during the progress of a suit, modify or change a statute regulating the allowance of costs without violating the constitutional inhibition against impairing the obligation of contracts. The rule stated has been applied to costs on appeal, in condemnation proceedings, and to an attorney's fee taxed as part of the costs." (p. 9.)

Whether a statute which provided that a landowner is entitled to "all costs, expenses and reasonable attorney fees" when the condemning authority fails to make payment of the full compensation within the time named by the court, should be applied to a condemnation action filed prior to the effective date of the statute was before the Illinois Supreme Court in *C & W. I. R. R. Co. v. Guthrie*, 192 Ill. 579, 61 NE 658 (1901). There the court said:

". . . Such amendment merely affects the method of procedure,—the remedy,—and the law is well settled that there can be no vested right in any particular remedy or method of procedure, and that while the general rule is that statutes will not be so construed as to give them a retrospective operation unless it clearly appears that such was the legislative intention, still, when the change merely affects the remedy or the law of procedure, all rights of action will be enforceable under the new procedure, without regard to whether they accrued before or after such change in the law, and without regard to whether suit had been instituted or not, unless there is a saving clause as to existing litigation. . . ." (p. 581.)

Kansas law is consistent with the proposition that when a change in the law merely affects the remedy or law of procedure it may have retrospective application. In *Jones v. Garrett*, 192 Kan. 109, 386 P. 2d 194, the court said:

"It is the law of this state that a statute which merely changes a remedy is not invalid, as there are no vested rights in any particular remedy. While generally statutes will not be construed to give them retroactive application unless it appears that such was the legislative intent, nevertheless when a

change of law merely affects the remedy or law of procedure, all rights of action will be enforced under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether or not the suit has been instituted, unless there is a saving clause as to existing litigation. *(Ellis v. Kroger Grocery Co.,* 159 Kan. 213, 152 P. 2d 860, 155 A. L. R. 546; *Ogdon v. Gianakos,* [415 Ill. 591, 596, 114 N. E. 2d 686]; *Tellier v. Edwards,* 56 Wn. 2d 652, 354 P. 2d 925; 50 Am. Jur. 505, Statutes § 482; 82 C. J. S. 996, 997, Statutes § 421.)" (p. 115.)

The provisions of 26-509, *supra,* do not attempt to create a new vested right or change the substantive law. The statute merely changes the remedy or law of procedure. There being no saving clause in the statute, the right of the landowners to recover attorneys' fees as part of the costs, where the condemner appeals and the jury renders a verdict for the landowners in an amount greater than the appraisers' award, may be enforced under the new statute even though the action was pending when the new statute became effective. In this case, the condemner having taken an appeal from the appraisers' award, the right of the landowners to court costs, including an amount to be paid to the landowners' attorney as attorney fees, did not accrue until the jury rendered its verdict for the landowners in an amount greater than the appraisers' award.

Accordingly, the trial court did not err in exercising its discretionary power by applying K. S. A. 26-509 to this case. The constitutional mandate that "full compensation" be made in money for the taking of a right-of-way by eminent domain is fulfilled by the trial court's order requiring the city to pay the attorney's fees for the landowners' attorney. (Kan. Const. Art. 12, Sec. 4.)

The appellant next contends the trial court had no evidentiary basis for the allowance of an attorney fee. It is argued that the three practicing attorneys called to testify for the appellees all testified the contingent fee agreement (45% of the amount recovered over the original offer to purchase) was a fair and reasonable contingent fee agreement between the landowners and their attorney; that none of them were able to testify to any familiarity with the amount of time spent by the attorneys, or with the degree of novelty of legal questions presented or with the other elements inherent in professional fees, but simply that the contingent fee was within the parameters of the recommended bar schedule for contingent fee arrangements.

In *Epp v. Hinton,* 102 Kan. 435, 170 Pac. 987, the court was confronted with an attorney's statutory lien, and its task was to "deter-

mine the amount due on said attorney's lien, if any." (G. S. 1915, § 485.) The evidence disclosed no agreement had been made as to the amount of the attorney fee, but there was agreement that no compensation was to be paid except on the contingency of successful litigation. Therefore, the court enumerated among the factors to be considered in making a reasonable fee allowance the contingency of successful litigation. The decision also states that while the trial court should give due consideration to the opinions of the expert witnesses as to the value of legal services, it is not controlled by such evidence, as the trial court itself is an expert on the subject and may apply its own knowledge and professional experience in determining the value of the legal services rendered.

In *Wollard v. Peterson,* 145 Kan. 631, 66 P. 2d 375, which was an action by an administrator *de bonis non* against a former administrator to collect assets and funds belonging to the estate, this court upheld the allowance of an attorney fee. There the court recognized several elements to be considered in determining the amount of a reasonable attorney fee and quotes the following statement for assistance in such a determination:

" 'The circumstances to be considered in determining the compensation to be recovered are the amount and character of the services rendered; the labor, time and trouble involved; the nature and importance of the litigation or business in which the services were rendered; the responsibility imposed; the amount of money or the value of the property affected by the controversy, or involved in the employment; the skill and experience called for in the performance of the services; the professional character and standing of the attorney; the results secured; . . .' (6 C. J. 750.) (See, also, 5 Am. Jur. 379.)" (p. 636.)

In *Wolf v. Mutual Benefit Health & Accident Association,* 188 Kan. 694, 366 P. 2d 219, the issue was whether the defendants-insurers were liable to the plaintiff-insured for attorney fees. Under G. S. 1959 Supp. 40-256 (presently K. S. A. 40-256) which provided for the allowance of a *"reasonable sum* as an attorney's fee" to be recovered as part of the costs, when an insurance company has refused without just cause or excuse to pay the full amount of the insured's loss, a contention on appeal was that the contingent fee contract was given an overriding effect by the trial court in determining a reasonable fee allowance. While the court did not find any reversible error in the trial court's allowance, the opinion distinguished an allowance under 40-256, *supra,* from the situation in *Epp v. Hinton,* supra, where the contingency of success was a factor considered in making an attorney's fee allowance. The court said:

"The statute (40-256, *supra*) provides for the allowance of a *reasonable sum* as an attorney fee to be recovered and collected as a part of the costs. It does not contemplate an amount in the nature of a speculative or contingent fee conditioned on winning the case, but only a reasonable fee for the appellee to pay his attorney for prosecuting the case. . . ." (p. 713.)

"The statute here in question (40-256, *supra*) has uniform operation and the same general considerations should govern in each case arising under it. The personal reasons why one insured may enter into a contingent fee contract should not lead a court into making an award of attorneys' fees by taking such contract into consideration. It would be erroneous, therefore, for the trial court to consider the contingent fee contract for any reason other than to establish the employment of counsel and the purpose for which counsel were employed." (p. 714.)

Returning to the instant case, the appellant argues that under *Wolf v. Mutual Benefit Health & Accident Association*, supra, the trial court could not consider the contingent fee contract as an element in determining the allowance of attorney fees. We do not agree. The situation here presented under 26-509, *supra*, is analogous to that in *Epp v. Hinton*, supra.

Under 26-509, *supra*, the court may allow as court costs an amount to be paid to the landowner's attorney as attorney fees. Such an amount is designed to be over and above the jury's verdict in the condemnation proceeding. But the allowance is by the statute itself made dependent upon the successful determination of the action—the rendering of a verdict by the jury in an amount greater than the appraisers' award. Thus, the contingency of success inheres in the authorization for an allowance of an amount for attorney fees under 26-509, *supra*.

The original offer to the landowners of approximately $23,000.00 for their property was increased by the appraisers' award to $45,-000.00, and by the jurys' verdict to $64,567.66. Evidence introduced at the trial disclosed a contingency fee contract of 45% of the difference between $23,000.00 and $64,567.66. On this basis the attorney's fee would figure roughly $18,700.00. The trial court allowed $13,500.00 as costs to be paid the landowners as and for their attorney fees.

All of the attorneys called by the parties to testify concerning the reasonable value of attorney fees support the allowance made by the court. Their opinions amply supplied the requirements of the various cases above reviewed.

The trial court was not, however, controlled by such evidence, because the trial judge is himself an expert on the subject and may

apply his own knowledge and professional experience in determining the value of the legal services. Under 26-509, *supra,* the value of the services of the landowner's attorney rests largely within the discretionary power of the trial court, and we cannot say undue consideration was given by the trial court to the contingency fee contract on the record here presented.

The judgment of the lower court is affirmed.