No. 85,469

ROBERT J. CREASON, *Appellant,* v. THE UNIFIED GOVERNMENT OF WYANDOTTE COUNTY, KANSAS, *Appellee.*

(33 P.3d 850)

Opinion filed November 2, 2001.

*John C. Tillotson,* of Murray, Tillotson, Nelson & Wiley, Chartered, of Leavenworth, argued the cause and was on the brief for appellant.

*Timothy P. Orrick*, of Parkinson, Foth & Orrick, L.L.P., of Lenexa, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Landowner Robert J. Creason appeals a jury determination of compensation due for the total taking of his rural residential property by Wyandotte County, Kansas, for a speedway project. Creason claims the trial judge erred in (1) instructing the jury to disregard his expert testimony on the commercial and domestic values of a gas well on the property; (2) denying his motion in limine and overruling his objections to the defendant's expert testimony of value based on the comparative sales method; (3) refusing to permit his cross-examination of a witness as to a prior panel appraisal of the property which included a value for the gas well; and (4) failing to give his requested jury instruction as to valuation of special use property.

Creason was the owner of rural residential property in Wyandotte County, comprised of approximately 31.5 acres. In addition to Creason's residence, the property contained a horse barn, a riding facility, a large stocked lake protected by groundwater filters, a large industrial shop building, over 2,800 cultivated trees, and an operating natural gas well.

The gas well was used for Creason's personal consumption. After the well was placed in production in the early 1980's, Creason extended a gas line to the vicinity of the gas company's line at the edge of his property. The gas company tested the gas and offered Creason a contract for the sale of the gas. However, Creason did not sign the contract because it required him to be available on the property to monitor the well.

On November 10, 1998, the Unified Government of Wyandotte County, Kansas City, Kansas, (County) filed an eminent domain action to acquire Creason's property for the construction of the Kansas Speedway project. The court-appointed appraisers awarded Creason $370,000 for the taking of his property. Creason was dissatisfied with the award and appealed to the district court.

On May 15-18, 2000, the sole issue for the jury to determine was the amount of just compensation for the property taken. After

the evidence was presented, the jury was instructed that the measure of compensation it was to award was the fair market value of the property immediately before its taking. "Fair market value" was defined by the district court as the amount in terms of money that a well-informed buyer is justified in paying and a well-informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. The jury was further instructed that in determining fair market value, it should consider all of the possible uses to which the property could have been put, including the best and most advantageous use to which the property was. reasonably adaptable, and that the uses considered must be so reasonably probable as to have had an effect on the market value of the property at the time of the taking. The jury was then specifically instructed to disregard the testimony of Dwayne McCune (Creason's expert) and Creason regarding the separate value of the gas well on Creason's property and to not award any separate amount as damages for Creason's gas well.

The testimony regarding the fair market value of the property without the gas well was set out for the jury. The court then listed the witnesses and the amounts the witnesses had testified to regarding the fair market value of Creason's property immediately prior to the taking:

"Robert J. Creason          $471,000
(Property Owner)

"Gary Gurss                 $394,000
"(Witness) [real estate appraiser who testified on behalf of Creason]

"Bernie Shaner              $310,000
"(Witness) [real estate appraiser who testified on behalf of the County]

"Christopher McCord         $305,000
   "(Witness) [real estate appraiser who testified on behalf of the County]"

The jury returned a verdict of $378,000 as just compensation for the taking of Creason's property. Creason appealed, raising three issues.

Our jurisdiction is pursuant to K.S.A. 26-504 (an appeal from a final order in an eminent domain proceeding).

## COMMERCIAL AND DOMESTIC VALUES OF THE GAS WELL

This jury trial commenced on May 15, 2000. On July 14, 2000, approximately 2 months later, this court filed *City of Wichita v. Eisenring*, 269 Kan. 767, 7 P.3d 1248 (2000). Therefore, the district court did not have the advantage of our decision in *City of Wichita v. Eisenring* at the time of trial. Some issues in this case are controlled by the standards and the law stated in *City of Wichita v. Eisenring*.

The measure of compensation is the fair market value of the property or interest at the time of the taking. K.S.A. 26-513(b). Prior to 1999, Kansas did not statutorily define fair market value. Compare K.S.A. 26-513 (Furse 1993) with K.S.A. 26-513. The case law prior to 1999 recognized three approaches to property valuation: the comparable sales method (also known as the market data method), the depreciated replacement cost method, and the capitalization of income method, which is based upon what the property is producing or is capable of producing in income. Previously, the favored approach to valuation in Kansas was the comparable sales approach. See *Ellis v. City of Kansas City*, 225 Kan. 168, 172, 589 P.2d 552 (1979). Because, in most instances, comparable sales of property in the same vicinity, with similar characteristics, usually resulted in a very accurate reflection of the fair market value of the property taken, judicial preference for the comparable sales approach was well established in this state. *City of Wichita v. Eisenring*, 269 Kan. at 774. Due to its sometimes speculative nature, the capitalization of income approach to valuation was strictly limited to cases where it was difficult, if not impossible, to use the comparable sales approach. 269 Kan. at 774.

In prior condemnation cases, the "unit rule" required that improvements, located upon land which is condemned, are not to be valued separately but are a part of the real estate and must be considered in determining the value of the land taken. *Ellis*, 225 Kan. 168, Syl. ¶ 1. The "unit rule" denoted a process of appraisal whereby the total value of real estate is first determined without placing a value on each of the separate contributing items. Consid-

eration of the value of buildings and improvements is limited to the extent they enhance the value of the land taken. 225 Kan. at 171. In contrast, the "summation method" of appraisal denotes a process of appraisal whereby each of several items that contribute to the value of real estate are valued separately and the total represents the market value thereof. Use of this method of appraisal has generally been rejected since it fails to relate the separate value of the improvements to the total market value of the property. *City of Manhattan v. Kent*, 228 Kan. 513, 518, 618 P.2d 1180 (1980).

The 1999 amendment to K.S.A. 26-513 included the addition of subsection (e), which provides:

" 'Fair market value' means the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. *The fair market value shall be determined by use of the comparable sales, cost or capitalization of income appraisal methods or any combination of such methods.*" (Emphasis added.)

In *City of Wichita v. Eisenring*, this court reviewed the 1999 amendment and held that the comparable sales method was no longer the preferred method of valuation in condemnation proceedings. 269 Kan. at 774. By virtue of the 1999 amendment, the three generally recognized methods of valuing real estate stood on equal footing: the depreciated replacement cost approach—the reproduction cost of the property at the time of taking less depreciation; the comparable sales approach—the value of the property based upon the recent sales of comparable properties; and the capitalization of income approach—the capitalization of net income from the property. 269 Kan. at 774.

As noted previously, some cases decided prior to the 1999 amendments to K.S.A. 26-213 recognized that the comparable sales approach to valuing property was not always appropriate because there were situations where the property was so unique that there was no ascertainable market, and there were no sales of reasonably similar or comparable property. In such a case, the depreciated replacement cost method or the capitalization of income method was used to derive a value for the property taken and a fair determination of the damages due. *Ellis v. City of Kansas City,*

225 Kan. 168, Syl. ¶ 3, 589 P.2d 552 (1979). As this court stated in *Eisenring v. Kansas Turnpike Authority*, 183 Kan. 774, 779, 332 P.2d 539 (1958):

"The absence of market value, in the sense that there is a lack of evidence of comparable sales, does not prevent recovery by the owner in the event of condemnation. It occasionally happens that a parcel of real estate or a leasehold interest taken by eminent domain is of such a nature, or is held or has been improved in such a manner, that, while it serves a useful purpose to its owner, he would be unable to sell it at anything like its real value. Where the usual means of ascertaining market value are lacking, or other means must from necessity of the case be resorted to, it is proper to determine the market value by considering the intrinsic value of the property, and its value to the owners for their special purposes. The owner of the property taken is not required under such circumstances to make any pecuniary sacrifices."

Prior to the 1999 amendments to K.S.A. 26-513, this court consistently recognized that the unit rule was applicable only to cases where the comparable sales approach was utilized to value the property taken. The depreciated replacement cost or capitalization of income methods of appraisal did not require application of the unit rule. In instances where these methods are used, it would be an empty formalism to require the expert witness to state the overall value before testifying as to how the value was determined. See, e.g., *Ellis*, 225 Kan. at 172. As stated in *Eisenring v. Kansas Turnpike Authority*, 183 Kan. at 779-80:

"In the absence of market value, because the special type of property is not commonly bought and sold, resort may be had to the testimony of more specialized experts. The value of property for a special use to which it is adapted or put may be shown by persons familiar with such use, even though they are not familiar with land values generally."

Here, Creason called an expert in petroleum engineering, Dwayne McCune, to testify on the valuation of the gas well for both domestic and commercial purposes. McCune had prepared a gas reserve estimate and evaluation of Creason's property as of August 29, 1998. McCune testified that the well was drilled and finished in a manner to produce gas commercially. McCune testified that the well had approximately 30 years of future production as of the date of taking, if the reserves were exploited only from

the existing well. McCune's opinion was that the future income value of the well was $223,791, reduced to a present value of $155,136.

When considering jury instructions, and after reviewing *Eisenring v. Kansas Turnpike Authority*, 183 Kan. 774, the trial judge stated:

"I have now had an opportunity as counsel know to read that case in detail, and there just is absolutely no question in my mind that that does not cover the situation that we have here. I don't think that anticipates a piece of property that can be—is impossible to put any market value on it. I think it's totally different here, and amongst other things, would anticipate—would even be more close in the event that this gas well was a working well at the present time and so forth, and had been utilized for that purpose. But the situation we have here is that it's in the words of this case, speculative and conjectural—a conjectural and speculative use and value placed upon that; and also, as they stated at page 782 down at the bottom here, Eisenring's lease was in operation, and the element of income was present at the time of the condemnation, not in the uncertain future. And I think that that's what applies here, that kind of language in the situation that we have here. So, I—that's going to be my ruling on that issue, and therefore, the [PIK Civ. 3d] 131.08 as modified instruction will not be given, and the plaintiff will not be able to argue that testimony supported by Mr. McCune as an element of the fair market value of this property, and accordingly, I see no other use to indicate at this time Mr. McCune's testimony should be stricken because that was the only purpose for [which] it was offered."

Based on *Eisenring v. Kansas Turnpike Authority*, the judge instructed the jury to disregard McCune's testimony regarding the separate value of the gas well in ascertaining the fair market value of the property.

Creason contends that the trial judge erred in instructing the jury to disregard his expert's testimony on the commercial value of the gas well. He argues that the property is unique because it contains a gas well, and as a unique property, it is not amenable to valuation by the comparable sales method. Creason argues that to arrive at the fair market value of his property, the capitalization of income method of valuation must be utilized, and McCune's testimony regarding the potential income represented by the gas reserves was necessary to value the property using the capitalization of income method of valuation.

Although, the County's valuation experts did not rely on the capitalization of income method of valuation to appraise Creason's property, the County does not take issue with the use of the capitalization of income method of valuation as a valid method of property valuation in this condemnation case. The County contends, however, that the trial judge properly applied the "unit rule" in excluding Creason's evidence regarding his natural gas well. The County argues that the legislature's failure to amend the "unit rule" articulated in K.S.A. 26-513(d) when the legislature added subsection (e) of that statute specifically authorizing the use of the capitalization of income and the depreciated replacement cost methods of property valuation is a clear indication that the legislature intended the "unit rule" to pertain to all three valuation methods. We note that the "unit rule" was not the basis of the trial judge's decision to exclude the commercial valuation of the gas well from the jury's consideration.

The 1999 Kansas Legislature did not amend subsection (d) of K.S.A. 26-513, which includes the "unit rule." Subsection (d) provides:

*"Factors to be considered.* In ascertaining the amount of compensation and damages, the following nonexclusive list of factors shall be considered if such factors are shown to exist. *Such factors are not to be considered as separate items of damages, but are to be considered only as they affect the total compensation and damage under the provisions of subsections (b) and (c) of this section.* Such factors are:

"(1) The most advantageous use to which the property is reasonably adaptable." (Emphasis added.)

In addition to the first factor set out, the statute enumerates 14 other factors which are not applicable to the facts of this case.

As noted, the depreciated replacement cost and the capitalization of income methods of valuation were used in Kansas to value unique properties long before the 1999 amendment to K.S.A. 26-513. The 1999 amendment placed those methods of valuation on an equal footing with the comparable sales approach, thereby permitting the use of the depreciated replacement cost and the capitalization of income methods where those methods provide information pertaining to the value of the property. "The value of

property for a special use to which it is adapted or put may be shown by persons familiar with such use, *even though they are not familiar with land values generally.*" (Emphasis added.) *Eisenring v. Kansas Turnpike Authority*, 183 Kan. at 779-80. The reasons for allowing the jury to consider evidence of the income potential of property apart from the property's value as a whole remains as valid after the amendment as it was prior to the amendment: The income value of property often must be provided by experts who have no expertise in property valuation generally.

Although expert testimony evidence may be admitted which relates solely to the future income potential of the property, an aspect of the unit rule nevertheless remains effective to provide that an award of compensation must reflect the value of the property as a whole. There is an important distinction between the measure of value and the evidence admissible to prove it. The award of just compensation cannot assign separate values to component parts of the property. In other words, one value cannot be given to the land, another value to the water rights, and another to the mineral rights. However, to demonstrate how the value of the property as a whole is enhanced by a natural asset, evidence can be introduced of its separate value.

Just compensation for property taken in a condemnation proceeding is the fair market value of the property taken. Fair market value means the amount in terms of money that a well-informed buyer is justified in paying and a well-informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. K.S.A. 26-513(e). Properly instructed, the jury could have found that the commercial value of the gas well on Creason's property would have an effect on the amount of money that a well-informed buyer would be justified in paying for Creason's property. The trial judge erred by failing to allow the jury to consider the testimony relative to the value of the gas well.

Reversed and remanded for a new trial.