No. 102,235

MANHATTAN ICE AND COLD STORAGE, INC., *Appellant*, v. CITY OF MANHATTAN, KANSAS, a Municipal Corporation, *Appellee*.

(274 P.3d 609)

Opinion filed March 23, 2012.

*John R. Hamilton*, of Hamilton, Laughlin, Barker, Johnson & Watson, of Topeka, argued the cause, and *Robert L. Pottroff*, of Pottroff Law Office, P.A., of Manhattan, was with him on the briefs for appellant.

*William L. Frost*, of Morrison, Frost, Olsen, Irvine, Jackson & Schartz, LLP, of Manhattan, argued the cause, and *Katharine J. Jackson*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This appeal arises out of an eminent domain proceeding on three tracts. Landowner Manhattan Ice and Cold Storage, Inc. (Landowner) appeals the $3,515,043 judgment of the district court, challenging evidentiary rulings and one instruction. The condemning authority, the City of Manhattan (City), pursues a conditional cross-appeal. Because we affirm the district court's judgment, we need not reach the cross-appeal issues.

## FACTUAL AND PROCEDURAL BACKGROUND

### Events Leading Up To Trial

Landowner initiated district court review of the $3.2 million appraisers' award for the June 29, 2007, taking of three tracts of land: one unimproved, one underlying a Rainbo Bread business, and one underlying a Manhattan Meats processing plant.

During pretrial discovery, the City took depositions of landowner's president, Steve Saroff; landowner's designated appraisal expert, Christopher J. Heavey, whose resume identifies him as a property management professional; and landowner's designated rebuilding expert, James Larva, a construction project manager. During his deposition, Saroff opined that the three tracts had a total fair market value of $10 million. Heavey's written report included a total fair market value for the three tracts of $12,241,367.86, $7,907,205 of which was attributable to the "replacement cost" of the Manhattan Meats processing plant. This cost was calculated in the written report of Larva.

At the time of the pretrial conference, the trial judge permitted landowner to add Dr. James Marsden as an expert witness. Landowner intended to use Marsden to testify on United States Department of Agriculture regulations for meat processing plants.

The City filed an initial and supplemental motion in limine before trial, seeking exclusion of:

(1) Testimony of Heavey on any opinion about the Rainbo Bread or Manhattan Meats tract or any proposed use, on fair market value of the subject property, on the replace-

ment cost method of appraising, and on depreciation of the subject property;

(2) Testimony of Larva or of Mark Redmond on any opinion of the cost to build or replace any improvements;

(3) Testimony of Bob Bramhall on any opinion of the cost to install heating or air conditioning units or refrigeration equipment;

(4) Testimony of Saroff on any opinion of value related to this case;

(5) Testimony of Saroff and/or Debbie Saroff on the uniqueness of the property, just compensation, conversations with the City regarding the property, special use of the property, historical value of the property, compatible uses of the property, or planned improvements;

(6) Testimony of Marsden on any "special value" or any other value of the subject property;

(7) Testimony of Jean Wherrel; Brett Ballou, Roger Schultz, Tim Schultz, or any representative of Schultz Construction Company; testimony of Jim Gleason, Mark Warner, Don Ince, Joe Mills, Bruce McCallum or any representative of Dial Realty; testimony of Ron Fehr, Jason Hilgers or Brian Williams; or Don Crubel on any issue;

(8) The contract for purchase of Ince's stock, other evidence of Ince's buyout, or photos from the national registry of Saroff's historical home; and

(9) Any evidence related to the Kansas Department of Transportation's acquisition of property for a bridge over the Kansas River.

In the trial judge's order ruling on the motions, he stated:

"1. Replacement cost less depreciation is a valid and recognized method of valuing land in a condemnation proceeding.

"2. The opinions of Chris Heavey and a representative of Herndon & Redmond, Inc.[,] are admissible as to the cost of the replacement of the existing buildings and land within the subject tract.

"3. Steve Saroff, as a landowner, is entitled to testify as to the value of his land, notwithstanding his opinion may be based on what he has heard from others.

"4.  The testimony of Bob Bramhall as to the cost of refrigeration equipment is too remote in time and will not be allowed.

"5.  With regard to defendant's supplemental motion in limine the [testimony of Saroff or Debbie Saroff regarding the uniqueness of the property, just compensation, conversations with the City regarding the property, historical value of the property, compatible uses of property, planned but not yet accomplished improvements or design changes to the property; testimony of Don Crubel regarding the subject properties; testimony of Jean Wherrel; testimony of Brett Ballou, Roger Schultz, Tim Schultz, or any other representative of Schultz Construction Company; testimony of Jim Gleason, Mark Warner, Don Ince, Joe Mills, Bruce McCallum or any representative of Dial Realty; testimony of Ron Fehr, Jason Hilgers, or Brian Williams regarding any issue in this matter; introduction of the contract for purchase of Don Ince's stock, other evidence of Ince's buyout, or photos of national registry of Steve Saroff's historical home; and introduction of any evidence related to the DOT's acquisition of property related to bridge over the Kansas River] will not be allowed as irrelevant . . . .

"6.  The DVD recording of the view of plaintiff's premises is relevant and admissible on the issue of depreciation in the replacement cost approach to valuation.

"7.  The testimony of James Marsden is inadmissible as irrelevant to the only issue in this case, that is the fair market value of the land in question."

Landowner sought reconsideration of the trial judge's decision regarding Saroff's testimony on the uniqueness of the property and possible design changes. The City responded, arguing that evidence of "uniqueness" was appropriate only when there was no ascertainable market or comparable sales for the property. The district judge ruled that Saroff could testify in detail about the description of the subject property, its prior uses, and its use on the day of the taking; but he could not testify about what "could have been done" with the property.

*Trial*

Landowner's first witness was the City's designated expert, Fletcher Simmons. During Simmons' direct examination, landowner elicited information about the different methods of valuation allowable under the Kansas statute—comparable sales, replacement cost, and income capitalization—and about Simmons' valuation of the subject property.

Landowner next called Saroff to the witness stand. Saroff described the three tracts, past uses for the land, the existing meat

processing plant on the Manhattan Meats tract, the value of the total land and property taken by the City, the information he relied on to value the property, and alternative uses for the property.

At various points during Saroff's testimony, the City objected to attempts to introduce figures prepared by Heavey and Larva, and the district judge held bench conferences outside of the jury's hearing. During these conferences, landowner's counsel repeatedly asserted that a landowner could testify based on hearsay, as expert valuation witnesses have been permitted to do in past eminent domain proceedings. The district judge disagreed.

At one point during Saroff's direct testimony, counsel for landowner asked him to "draw some numbers" on an easel before the jury, apparently seeking to have him perform a calculation of replacement cost. The City objected because it believed Saroff would be relying on Heavey's information. During the ensuing in-chambers conference, the trial judge asked counsel for landowner where Saroff's number for the replacement cost of the meat processing plant came from, and the the following exchange occurred:

"MR. POTTROFF: Mr. Heavey and Mr. Larva sat down and went through what it cost to rebuild that building reproduction.

"THE COURT: Can Mr. Heavey testify that he has any expertise in rebuilding a building?

"MR. POTTROFF: No.

"THE COURT: And he got his information from Mr. Larva?

"MR. POTTROFF: Absolutely, just like the other appraisers.

"THE COURT: We're right back where we were five minutes ago.

"MR. POTTROFF: So the City's appraisers can use hearsay, but mine can't?

"THE COURT: City's appraisers are here to testify. Yours aren't.

"MR. POTTROFF: [Heavey's] in the courtroom, and hearsay rule doesn't apply to someone in the courtroom.

"THE COURT: But he doesn't have the expertise to talk about rebuilding a building. I was going to let him testify from his expertise as a broker to establish the value of the property from his opinion, but Mr. Larva is the man who talks about rebuilding the building, what it costs to do the building. That's who needs to be here to talk about construction of the building.

. . . .

"THE COURT: . . . If you want Larva's numbers in, you get Larva here. And Heavey's information is based on Larva, so that doesn't come in without Larva. It's that simple. But Mr. Saroff can get on the witness stand and say, "I think my property is worth 'X'."

"MR. POTTROFF: But he can't give the basis for this opinion?
"THE COURT: No."

Heavey was present and in the courtroom during trial, but land-owner never called him as a witness. Larva also was not called as a live witness; he was not present at the trial.

After Saroff's testimony concluded, landowner proffered evidence of what it characterized as two prior comparable sales of its property, one to Pizza Hut in 2004 for $13,640,934 and one to the Kansas Department of Transportation in 1995 for $26 per square foot, when the City was building a bridge over the Kansas River. Landowner further proffered evidence that the KDOT sale was an arm's length transaction flowing from negotiations conducted as though condemnation was not possible.

The City presented testimony from two experts at trial: Timothy Keller and Simmons. Keller valued the subject property at $2.52 million, using the comparable sales method, and testified that the highest and best use of the property was as commercial property for redevelopment. Fletcher valued the property at $3.3 million, using the comparable sales method, and testified that the highest and best use of the property was as commercial property for redevelopment.

At the close of trial, landowner requested two instructions pertaining to special use property: PIK Civ. 4th 131.08 and 131.09. PIK Civ. 4th 131.08 reads:

"The owner contends the (*entire property*) (*property taken*) is (*property that is not customarily bought and sold*) (*held or has been improved in such a manner that it serves a useful and special purpose to its owner, and could not be sold at anything like its value to another*) and therefore it has no measurable market value. The owner has the burden of proof as to the issue that the property has no measurable market value.

"If you are persuaded that the value of the property cannot be determined by market value, then you must use a different measure of compensation instead of market value. In determining your award you may consider the value of the property to the owner for (*his*) (*her*) special use or purpose, or for any purpose to which (*his*) (*her*) property is reasonably adaptable. These special uses or purposes must be real, not speculative, conjectural or remote."

PIK Civ. 4th 131.09 reads:

"The owner's property consisting of _____ was taken. The measure of compensation is its value to the owner at the time of the taking. The date of the taking was _____.

"In determining your award you are to consider the value of the property to the owner for (*his*) (*her*) special use or purpose, or for any other purpose to which the property is reasonably adaptable. These special uses or purposes must be real not speculative, conjectural or remote."

The district judge declined the requested instructions, holding that this was not a special use case in which there was no ascertainable market for the subject property.

The trial judge did instruct the jury that evidence of fair market value had been presented as follows:

Timothy Keller

| | |
|---|---|
| Vacant Tract | $290,000 |
| Rainbo Bread tract | $430,000 |
| Manhattan Meat tract | $1,800,000 |
| Total: | $2,520,000 |

Fletcher Simmons:

| | |
|---|---|
| Vacant tract | $588,000 |
| Rainbo Bread tract | $500,000 |
| Manhattan Meat tract | $2,213,000 |
| Total: | $3,301,000 |

Steve Saroff:

| | |
|---|---|
| Three tracts of land | $5,000,000 |
| Manhattan Meat building | $10,000,000 |
| Total: | $15,000,000 |

The trial judge, consistent with K.S.A. 26-513(e) and pattern instructions, also defined fair market value, and he instructed the jury that fair market value could be determined using any one or any combination of the three statutorily authorized valuation methods. The judge told the jury that its award of compensation must fall within the range of testimony presented in the case and that it was to consider the best and most advantageous use to which the

property was reasonably adaptable, as long as that use was not speculative or conjectural.

The jury deliberated and returned a verdict of $3,515,043.

## ANALYSIS

Landowner argues on this appeal that the trial judge's evidentiary rulings and refusal to instruct on special use prevented it from presenting its theory of the case, namely, that the meat processing plant was a special use property justifying use of the replacement cost method of valuation. Before we address each of landowner's issues, we briefly review certain basic eminent domain principles.

An eminent domain proceeding is statutory in nature. *Miller v. Bartle*, 283 Kan. 108, 114, 150 P.3d 1282 (2007). The only determination for the jury at the trial of a condemnation action is the fair market value of the land being taken by the governmental entity. 283 Kan. at 115 (citing K.S.A. 26-508).

K.S.A. 26-513(e) defines fair market value as

"the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion. The fair market value shall be determined by use of the comparable sales, cost or capitalization of income appraisal methods or any combination of such methods."

Under the definition in K.S.A. 26-513, there are three methods for valuing property—comparable sales, replacement cost, or income capitalization. In *City of Wichita v. Eisenring*, 269 Kan. 767, 774, 7 P.3d 1248 (2000), this court noted that, before the addition of subsection (e) to K.S.A. 26-513 in 1999, the favored method of valuation in Kansas was the comparable sales approach, also known as the market data approach. Once the statute was amended, Kansas recognized all three methods and permitted any one or any combination of the three to value property subject to condemnation. 269 Kan. at 775. "[A]ll three methods stand on equal footing," and this court no longer gives preference to one method over another. 269 Kan. at 775.

## Evidentiary Rulings

A district judge " 'has broad discretion in determining what evidence will be allowed in an eminent domain proceeding.' " *Mooney v. City of Overland Park*, 283 Kan. 617, 619, 153 P.3d 1252 (2007) (quoting *U.S.D. No. 464 v. Porter*, 234 Kan. 690, 694, 676 P.2d 84 [1984]).

"[A] motion in limine may be granted when a district court finds two factors are present: (1) The material or evidence in question will be inadmissible at a trial; and (2) The pretrial ruling is justified as opposed to a ruling during trial because the mere offer or mention of the evidence during trial may cause unfair prejudice, confuse the issues, or mislead the jury; the consideration of the issue during the trial might unduly interrupt and delay the trial and inconvenience the jury; or a ruling in advance of trial may limit issues and save the parties time, effort, and cost in trial preparation. In determining if a pretrial ruling is justified a district court should weigh whether the court will be in a better position during trial to assess the value and utility of evidence and its potential prejudice." *State v. Shadden*, 290 Kan. 803, 816, 235 P.3d 436 (2010).

A multistep evidentiary analysis applies to the first factor in the motion in limine analysis. 290 Kan. at 817.

" 'Generally, when considering a challenge to a district judge's admission of evidence, an appellate court must first consider relevance. Unless prohibited by statute, constitutional provision, or court decision, all relevant evidence is admissible. K.S.A. 60-407(f). Evidence is relevant if it has any tendency in reason to prove any material fact. K.S.A. 60-401(b). To establish relevance, there must be some material or logical connection between the asserted facts and the inference or result they are intended to establish. [Citation omitted].' " *Mooney*, 283 Kan. at 620 (quoting *State v. Gunby*, 282 Kan. 39, 47, 144 P.3d 647 [2006]).

"[T]he question of whether evidence is probative is judged under an abuse of discretion standard; materiality is judged under a de novo standard." *Shadden*, 290 Kan. at 817 (citing *State v. Reid*, 286 Kan. 494, 507-09, 186 P.3d 713 [2008]). The next step is to determine which additional rules of evidence or other legal principles govern admissibility. "On appeal, this conclusion is reviewed de novo." 290 Kan. at 817 (citing *Boldridge v. State*, 289 Kan. 618, Syl. ¶ 10, 215 P.3d 585 [2009]). " '[E]videntiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion, depending on

the contours of the rule in question.' " *Mooney*, 283 Kan. at 620 (quoting *Gunby*, 282 Kan. at 47).

The second question that must be answered by a trial judge faced with a motion in limine test—whether a pretrial ruling is preferable to a ruling during trial—is reviewed on appeal for abuse of discretion. *Shadden*, 290 Kan. at 818.

In addition, "[e]vidence in an eminent domain proceeding consists mostly of the opinions of witnesses who are sufficiently well informed on the subject to be helpful and informative to the jury. Such evidence is allowed because the valuation of real estate is largely a subjective matter and cannot be definitely determined by the application of any exact principle of science." *City of Wichita v. Eisenring*, 269 Kan. at 774 (citing 5 Nichols on Eminent Domain § 18.15 [3d ed. 1997]).

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness." K.S.A. 60-456(b); 269 Kan. at 776. The qualification of an expert witness and the admissibility of expert testimony are both matters within the broad discretion of the trial court. 269 Kan. at 776.

A lay witness may offer opinions or inferences "as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clearer understanding of his or her testimony." K.S.A. 60-456(a). In addition,

"[a]s a prerequisite for the testimony of a witness on a relevant or material matter, there must be evidence that he or she has personal knowledge thereof, or experience, training or education if such be required. Such evidence may be by the testimony of the witness himself or herself. The judge may reject the testimony of a witness that the witness perceived a matter if the judge finds that no trier of fact could reasonably believe that the witness did perceive the matter." K.S.A. 60-419.

We review a trial judge's determination of whether a lay or expert witness is qualified to testify under an abuse of discretion standard. *Pullen v. West*, 278 Kan. 183, 210-11, 92 P.3d 584 (2004).

### 1. *Exclusion of 17 Witnesses*

Landowner challenges the trial judge's exclusion of the testimony of 17 witnesses—Bramhall, Debbie Saroff, Crubel, Wherrel, Ballou, Roger Schultz, Tim Schultz, any representative of Schultz Construction Company, Gleason, Warner, Ince, Mills, McCallum, any representative of Dial Realty, Fehr, Hilgers, Williams—as irrelevant. The first question we must examine is whether this issue was adequately preserved for appeal.

When the district judge granted the City's motion to exclude the testimony of these witnesses, landowner submitted supplemental responses to the City's first set of interrogatories as a written proffer of the witnesses' testimony. Those responses contained the substance of the testimony, and we therefore agree that the issue of admission of the testimony of these witnesses was preserved for appeal. See K.S.A. 60-405; *State v. Evans*, 275 Kan. 95, 99, 62 P.3d 220 (2003) ("The proponent of excluded evidence has the duty of making known the 'substance' of the expected evidence in a proffer. [Citation omitted.] A formal offer of proof in question and answer form is not required if an adequate record is made in a manner that discloses the evidence sought to be introduced.").

Despite preservation for appeal, the issue of whether testimony from 14 of the 17 witnesses should have been permitted has now been abandoned. Landowner's brief to this court identified only three of the witnesses—Marsden, Bramhall, and a representative of Schultz Construction Company—as exemplary of the trial judge's alleged exclusion error. No explanation was offered on how the testimony of these 3 related to that of the 14 others. Without such an explanation, our review of the merits on the 14 witnesses is rudderless and, ultimately, impossible. This is precisely why a " 'point raised only incidentally in a brief but not argued there is deemed abandoned,' " and we will not address the exclusion of those 14 witnesses' testimony here. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 281, 225 P.3d 707 (2010) (quoting *Cooke v. Gillespie*, 285 Kan. 748, Syl. ¶ 6, 176 P.3d 144 [2008]).

We can address the merits on Marsden, Bramhall, and the representative of Schultz.

Landowner's proffer on Marsden indicated that he would testify about the meat processing plant meeting United States Department of Agriculture regulations on food safety. Landowner contends this evidence supported its theory that the property had a special use relevant to the replacement cost method of valuation.

Although it is true that the existence of a property's special use may be relevant to a party's argument that replacement cost is the most appropriate method of valuation, in this case, landowner appears to use the phrase "special use" as a synonym for the more general "best and most advantageous use." The descriptor "special use" is intended to convey that there is no comparable market data an appraiser might use to value a property. See *Eisenring v. Kansas Turnpike Authority*, 183 Kan. 774, 779, 332 P.2d 539 (1958). And it was essential that the descriptor be applicable before the 1999 amendment to K.S.A. 26-513 if a party wanted to use an appraisal method other than comparable sales. See *City of Wichita v. Eisenring*, 269 Kan. at 774. Now, however, the concept of "best and most advantageous use" or "highest and best use" is used in both K.S.A. 26-513(d) and PIK Civ. 4th 131.05 as the use an eminent domain jury should consider when awarding just compensation. If property can be used for more than one purpose, the tract should be valued at its highest and best use. See 4 Nichols on Eminent Domain § 12B.13, p. 12B-113 (3d. ed. 1997). In this case, landowner never argued that there was no ascertainable market for the property; instead, it merely argued that the best and most advantageous use of the property was as a meat processing plant.

Regardless, there was no dispute at trial that landowner operated a meat processing plant on the subject property. And Saroff testified that the plant was complying with and would comply with USDA regulations. While Marsden's testimony was potentially relevant to the viability of either a special use or a highest and best use, we see nothing in the proffer that would have added to what Saroff's testimony already provided. Although the trial judge's exclusion of Marsden's testimony as irrelevant may have been erroneous, its exclusion as cumulative would not have been. *State v. Reed*, 282 Kan. 272, 280, 144 P.3d 677 (2006) (court has power to exclude evidence that is cumulative); see also *Robbins v. City of*

*Wichita*, 285 Kan. 455, 472, 172 P.3d 1187 (2007) (if district court reaches correct result, decision will be upheld even if it relied upon wrong ground or assigned erroneous reasons for its decision). There is no prejudice from any error in analysis; and landowner is not entitled to reversal because of the exclusion.

Turning to Bramhall, landowner intended to call him to testify about a February 18, 2004, proposal he had prepared on the cost of refrigeration equipment for the meat processing plant. Bramhall also would have testified that the existing refrigeration system would be less expensive to operate than a new one. Landowner intended for Heavey to use Bramhall's proposal in calculating the value of the property. The district judge excluded Bramhall's testimony because his proposal was too remote in time from the date of the taking.

The question of whether evidence concerns material too remote in time to be admissible lies within the discretion of the trial court. *Adrian v. Elmer*, 178 Kan. 242, 247, 284 P.2d 599 (1955); see also *Miller v. Glacier Development Co.*, 284 Kan. 476, 480, 161 P.3d 730 (2007) (discretion abused when comparable sales from 7 to 8 years earlier admitted). Temporal remoteness is one of the factors a district court should consider when acting as a gatekeeper for admission of evidence in an eminent domain trial. See *Mooney*, 283 Kan. at 619 (remoteness of comparable sale considered).

Here, landowner does not present any argument on appeal to respond to the trial judge's assessment of Bramhall's report as too remote. Instead, landowner focuses only on the importance of Bramhall's report and how it would have factored into Heavey's replacement cost valuation.

We hold that the district judge did not abuse his discretion when he ruled that the 3-year-old proposal for refrigeration equipment was too remote in time from the date of the taking to be admissible in the trial of this eminent domain action. There was no dispute about either date, and thus the only factual finding necessary to the judge's decision was supported by substantial competent evidence; the judge did not rely on an erroneous interpretation of the governing law; and we cannot say that no reasonable person would have arrived at the same decision. See *State v. Gonzalez*, 290 Kan.

747, 755-57, 234 P.3d 1 (2010) (multiple possibilities for abuse of discretion standard discussed). This holding makes reaching the argument actually advanced on appeal by landowner—that Bramhall's testimony about his proposal would have provided critical support to Heavey—unnecessary. Even if landowner believes the evidence was important, it was properly excluded as too remote in time.

Finally, we address landowner's assertion on appeal that the trial judge should not have excluded testimony from a representative of Schultz Construction Company. The company prepared an estimate to rebuild the meat processing plant, which landowner intended Heavey to rely upon. Landowner argues that testimony from a representative of Schultz also was relevant and essential to support Saroff's testimony on replacement cost, because Saroff's valuation was based, in turn, on Heavey's report.

Landowner did not identify a representative from the company as an expert, and any representative would therefore have to have been treated as a lay witness. Even if the type of testimony landowner desired to admit from the representative could have been characterized theoretically as compliant with the statutory requirements in K.S.A. 60-456(a) and K.S.A. 60-419, no particular person responsible for preparation of the rebuild proposal was ever identified by landowner. Without a proffer as to a particular individual, we are not in a position to review the decision of the trial judge on relevance. Landowner bore the burden of making and preserving a record sufficient to support its claims on appeal. See K.S.A. 60-405; *Evans*, 275 Kan. at 99. Without such a record, this claim of error fails.

### 2. *Limitation of Saroff's Testimony*

Landowner also argues on appeal that the trial judge placed too many restrictions on the testimony of Saroff.

It is apparent from the trial transcript that landowner's strategy at trial was to admit evidence of various components or aspects of calculation of replacement cost without any expert testimony on how that calculation should be performed, leaving that task to the jury. Statements of landowner's counsel, in particular, demonstrate

that he did not think his case required an independent expert appraisal witness. Rather, Saroff, as representative of the landowner, could be the only valuation witness, and he could testify like an expert and rely upon the hearsay opinions of Heavey and Larva. See, *e.g.*, *City of Wichita v. Eisenring*, 269 Kan. at 782 (" 'Information acquired from others, though generally not admissible as an independent fact, may be sufficient to qualify an expert and to supply a partial basis for his opinion.' "); *Board of Sedgwick County Comm'rs v. Kiser Living Trust*, 250 Kan. 84, 96, 825 P.2d 130 (1992) ("[O]nce a witness has qualified as an expert, a court cannot regulate the factors used or the mental process by which the witness arrives at the conclusion. These matters can only be challenged by cross-examination testing the witness' credibility."). The trial judge stated that Saroff could not qualify himself as an expert and could not discuss opinions from Heavey and Larva as the basis for formation of his lay opinion; he could "state the basis for his opinion, and if it happened to be reading some of [an appraisal textbook], I'm going to allow it."

"It is well settled a landowner is a competent witness to testify as to the value of his property." *City of Wichita v. Chapman*, 214 Kan. 575, 580, 521 P.2d 589 (1974) (citing *City of Wichita v. May's Company, Inc.*, 212 Kan. 153, 155, 510 P.2d 184 [1973]; *Urban Renewal Agency v. Tate*, 196 Kan. 654, 414 P.2d 28 [1966]; *Taylor v. State Highway Commission*, 182 Kan. 397, Syl. ¶ 6, 320 P.2d 832 [1958]; and *Randle v. Kansas Turnpike Authority*, 181 Kan. 416, 420, 312 P.2d 235 [1957]). But "[t]he qualification of a landowner to testify as to the value of his land is not dependent on a showing of a knowledgeable background. It is based on the presumption the landowner has acquired knowledge by virtue of his ownership. Lack of knowledge is subject to exposure by the condemning authority." 212 Kan. at 155.

Landowner contends that this court held in *Mooney* that "[w]hen a landowner gives opinion testimony on the value of his own land, he does so in the capacity of an expert in the value of that particular property, even though he is not an expert on property values generally." As support, it states:

"Right after this Court mentioned the rule that a landowner is a competent witness on the value of his own land, this court went on to say: 'Once a witness is qualified as an expert, the court cannot regulate the factors used by the expert or the mental process employed to reach a conclusion; those matters should be tested by cross-examination.' 283 Kan. at 619."

Landowner misreads this passage in *Mooney*. The language upon which it relies is merely a restatement of the landowners' arguments in that case, not the opinion's holding. See 283 Kan. at 619-24. *Mooney* does not stand for the proposition that a landowner is equivalent to an appraisal expert or that he or she may parrot the opinions of experts as support for his or her fair market value. This is, in essence, what landowner sought to do here, and it was not error for the trial judge to disallow it. A landowner cannot do indirectly what he or she is unqualified to do directly.

Saroff could testify, as he did, to his own opinion of fair market value and, thus, just compensation: $15 million, with $10 million for improvements on the tracts and $5 million for the land. We also note that the trial judge's restrictions did not prevent Saroff from testifying about his business relationship with Heavey and Heavey's assistance in valuing the property and about his interaction with Larva and Larva's inspection of the property. This testimony surely accomplished at least some of what landowner hoped to accomplish, burnishing Saroff's nonexpert testimony about value with an expert cloth.

But Saroff was not qualified, as a lay landowner, to assemble the components of and calculate replacement cost, *i.e.*, the cost to replace existing improvements on the land minus depreciation plus the value of the land evidenced through comparable sales. See *Mooney*, 283 Kan. at 622. Nor was the jury, unguided by expert testimony or similarly established or recognized authority. It was landowner's burden to ensure that such expert testimony or other authority was presented, and it failed to carry it. This failure is not attributable to the trial judge's ruling limiting Saroff's testimony.

3. *Exclusion of Larva Deposition*

Landowner also argues on appeal that it should have been permitted to use the deposition of Larva in place of live testimony to

lay the foundation for admission of Larva's report on the cost of replacing the meat processing plant. Heavey relied in part on Larva's report in his valuation of the subject property, and landowner intended to admit Heavey's and Larva's reports during Saroff's testimony. Landowner argues the hearsay exception in K.S.A. 60-460(c)(1) and the authorization for use of a deposition at trial in K.S.A. 60-232(a)(3)(B) permitted it to use Larva's deposition as it sought to here.

This issue of statutory interpretation means our standard of review is de novo. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 400, 266 P.3d 516 (2011). In addition,

"[w]hen courts are called upon to interpret statutes, the fundamental rule governing our interpretation is that 'the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted.' *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001). For this reason, when the language of a statute is plain and unambiguous, courts 'need not resort to statutory construction.' *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007). Instead, '[w]hen the language is plain and unambiguous, an appellate court is bound to implement the expressed intent.' *State v. Manbeck*, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 (2004)." *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 754, 189 P.3d 494 (2008).

This issue also requires us to consider relevance, and our multistep analysis reviewed above applies here as well. See *Shadden*, 290 Kan. at 817 (probative value of evidence reviewed under abuse of discretion; materiality reviewed de novo; legal conclusion reviewed de novo).

K.S.A. 60-460(c) allows admission of a deposition at trial in certain circumstances:

*"Subject to the same limitations and objections as though the declarant were testifying in person,* (1) testimony in the form of a deposition taken in compliance with the law of this state for use as testimony in the trial of the action in which offered or (2) if the judge finds that the declarant is unavailable as a witness at the hearing, testimony given . . . in a deposition taken in compliance with laws for use as testimony in the trial of another action, when . . . (B) the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered . . . ." (Emphasis added.)

Under the plain language of this hearsay exception, admission of Larva's deposition would have been permitted only if the testimony it contained would have been admissible if he were live at trial. Landowner cannot meet this test because Larva's deposition testimony about his proposal for rebuilding the meat processing plant cannot pass the probative value prong of our relevance inquiry.

Larva based his estimate on a drawing provided by Redmond of Redmond and Herndon. Saroff had hired Redmond to prepare a drawing of a new meat processing plant to replace the one existing on the subject property. The record demonstrates, however, that the plant depicted in Redmond's drawing bore little resemblance to the existing plant. The most glaring disconnect: Redmond's plant was 52,400 square feet while the existing plant was 34,000 square feet.

Larva's testimony, even if live, would have suffered from another infirmity as well: Larva had no personal knowledge of the existing plant's size, dimensions, or equipment. He admitted at his deposition that he did not know how his estimate for the replacement building related to the current plant. In short, Larva lacked the knowledge, personal or acquired at the trial, required of an expert under K.S.A. 60-456(b)(1).

Landowner's argument based on K.S.A. 60-232(a)(3)(B) also is unavailing. The statute provides:

"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:   .   .   .   .
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds that: . . . (B) the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the state of Kansas, unless it appears that the absence of the witness was procured by the party offering the deposition." (Emphasis added.)

Although that statute provides that a deposition may be used at a trial if the witness is more than 100 miles away and the sponsoring party did not procure the witness' absence, it does not empower a

party wishing to use a deposition to disregard other evidentiary rules and requirements. Because Larva's deposition would have failed both the probative value prong of our relevance test as well as the K.S.A. 60-456(b)(1) knowledge requirement, it remained inadmissible despite K.S.A. 60-232(a)(3)(B).

### 4. Restriction of Heavey Testimony

Landowner also argues that the district judge placed improper restrictions on the testimony of its valuation expert, Heavey.

In its initial and supplemental motions in limine, the City asked the trial judge to prohibit Heavey's testimony regarding the value of Manhattan Meats or Rainbo Bread, any proposed multi-use shopping/marketplace/dining development, the fair market value of the subject property, the replacement cost method of appraisal, and depreciation. The trial judge ruled that the opinions of Heavey were "admissible as to the cost of the replacement of the existing buildings and land within the subject tract." In other words, Heavey was not prevented from testifying. To the extent his testimony was restricted at all, it was cabined only by the limitation of the entire action to jury determination of fair market value. See *Miller v. Bartle*, 283 Kan. 108, 114, 150 P.3d 1282 (quoting *Sutton v. Frazier*, 183 Kan. 33, 37-38, 325 P.2d 338 [1958]) (sole issue in eminent domain proceeding is amount of compensation due). Heavey was free to give his replacement cost-based opinion on fair market value, including components such as the values of the Rainbo Bread and Manhattan Meats improvements and depreciation.

The record reflects that Heavey attended the trial, but landowner chose not to call him to testify. Instead, landowner attempted unsuccessfully during Saroff's testimony to introduce an appraisal prepared by Heavey using Larva's estimate for the replacement meat processing plant. The record does not explain why landowner made this tactical decision or why, when it was clear it had failed, it did not jettison the tactic for the more conventional and probably more successful sponsorship of Heavey's direct testimony live.

Landowner is correct that our precedent has held that an expert in an eminent domain trial may testify to hearsay matters for the purpose of giving information upon which he or she relied in reaching a valuation conclusion. See *City of Wichita v. Eisenring*, 269 Kan. at 781-82 ("[T]he hearsay rule's application is limited with regard to expert testimony in eminent domain cases . . . . 'Information acquired from others, though generally not admissible as an independent fact, may be sufficient to qualify an expert and to supply a partial basis for his opinion.' "); *Board of Sedgwick County Comm'rs*, 250 Kan. at 96 ("[O]nce a witness has qualified as an expert, a court cannot regulate the factors used or the mental process by which the witness arrives at the conclusion. These matters can only be challenged by cross-examination testing the witness' credibility."). But this argument misses the source of any problem on Heavey's testimony. The problem was not that the trial judge disallowed appropriate opinions and support for them. The problem was that landowner did not call Heavey to the stand. Error, if any, must be laid at landowner's feet. See *State v. Murray*, 285 Kan. 503, 522, 174 P.3d 407 (2008) (invited error no basis for relief).

### 5. *Exclusion of Comparable Sales*

Landowner's last evidentiary challenge on this appeal concerns what it says were its unsuccessful efforts to present evidence of two sales it characterizes as comparable. Neither was considered by the City's experts.

One of these sales was made in 2004 to Pizza Hut and the other in 1995 to KDOT. At oral argument before us, landowner's counsel abandoned this claim of error regarding the KDOT sale, which, he conceded, was too remote in time from the taking.

Landowner asserts that it planned to get evidence of the Pizza Hut sale for $13,640,934 before the jury during Saroff's testimony, specifically, when he was instructed to "draw some numbers" on the easel. The City's objection and the court's ensuing ruling having to do with Saroff's reliance on the nontestifying Heavey and, in turn, the absent Larva, stopped Saroff before he could comply with the direction to "draw some numbers." But landowner says that

Saroff's planned demonstration would have begun with the Pizza Hut sale number. Landowner also claims that it attempted to introduce the same number during the cross-examination of the City's experts.

· The problem for us on appeal is that landowner directs us to no ruling by the district court on the admissibility of the Pizza Hut sale, and our search of the record has uncovered none. Under Supreme Court Rule 6.02 (2011 Kan. Ct. R. Annot. 39), this court presumes· the district court did not rule on an issue when an appellant fails to provide a record citation to the ruling in its brief. See *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 623, 244 P.3d 642 (2010) (citing *Southwestern Bell Tel. Co. v. Beachner Constr. Co.*, 289 Kan. 1262, 1275, 221 P.3d 588 [2009]). Without a ruling from the district court on this issue, we cannot proceed with formless appellate review.

*Instructions to the Jury*

Landowner's other appellate issue focuses on jury instructions. Before the trial court, it sought PIK Civ. 4th 131.08 and 131.09 concerning the special or unique use of the subject property. The trial judge refused to give either of these instructions.

" 'It is the duty of the trial court to properly instruct the jury upon a party's theory of the case. Error regarding jury instructions will not demand reversal unless it results in prejudice to the appealing party. Instructions in any particular action are to be considered together and read as a whole, and where they fairly instruct the jury on the law governing the case, error in an isolated instruction may be disregarded as harmless. If the instructions are substantially correct, and the jury could not reasonably be misled by them, the instructions will be approved on appeal.' " *Wolfe Electric, Inc.*, 293 Kan. at 383 (quoting *In re Care & Treatment of Foster*, 280 Kan. 845, Syl. ¶ 10, 127 P.3d 277 [2006]).

There must be evidence to support a party's theory before it is entitled to a jury instruction on it. See *Guillan v. Watts*, 249 Kan. 606, 617, 822 P.2d 582 (1991).

The "Notes on Use" for both requested PIK instructions read:

"Because of the 1999 amendment to K.S.A. 26-513(e), it will be a rare case, if any, in which giving this instruction will be appropriate. The amendment provided: 'The fair market value shall be determined by use of the comparable sales, cost or capitalization of income appraisal methods or any combination of such meth-

ods.' Because multiple methods of appraisal are allowed to determine market value, there will be few cases, if any, where 'the value of the property cannot be determined by market value' using one or more of those methods. The comparable sales method is no longer the preferred method of appraisal. *Creason v. Unified Gov't of Wyandotte County*, 272 Kan. 482, 33 P.3d 850 (2001). When a landowner contends that the property is of a type not customarily bought and sold or that it serves a useful or special purpose, the landowner ordinarily will offer evidence of value using the cost or capitalization of income methods. In such cases, it ordinarily will suffice to use PIK 4th 131.05, Fair Market Value—Definition, rather than this instruction."

In short, the two instructions sought by landowner here are outmoded. They were designed to be used in an era when the comparable sales method of valuation was the norm, the clearly preferred method. They were intended to support an outlier method of valuation, either replacement cost or capitalization of income, for a unique or highly unusual property. The current wording of K.S.A. 26-513(e) already provides for a unique or highly unusual property by making all of the three methods of valuation equally acceptable routes to establish fair market value. None of the methods requires reinforcement other than any it may draw from the evidence marshaled by the parties in a given case.

Here, jurors were instructed that they were free to consider replacement cost and capitalization of income methods as well as comparable sales. They knew that they must take into account "all of the possible uses to which the property could have been put, including the best and most advantageous use to which the property was reasonably adaptable." They knew that they needed to look at any existing use that had been "profitably carried on."

This was plenty. The instructions, considered together and read as a whole, were correct. The jury could not reasonably have been misled by them. The trial judge did not err by refusing to give PIK Civ. 4th 131.08 and 131.09.

## CONCLUSION

Because we hold that the landowner's challenges to the trial judge's evidentiary rulings lack merit and/or resulted in no prejudice, and the jury instructions given in this eminent domain case were legally sound, the judgment of the district court is affirmed.

LUCKERT, J., not participating.

FRANKLIN R. THEIS, and MICHAEL J. MALONE, District Judges, assigned.