NOT DESIGNATED FOR PUBLICATION

No. 119,064

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

REENA N. PATEL,
*Appellant*,

and

SRINIVAS YENDRU,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER J. ROUSH, judge. Opinion filed June 7, 2019. Affirmed.

*Jeffery L. Carmichael*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, and *T. Lynn Ward*, of Ward Law Offices, LLC, of Wichita, for appellant.

*Carolyn Sue Edwards*, of Law Offices of Carolyn Sue Edwards, P.A., of Wichita, for appellee.

Before STANDRIDGE, P.J., GARDNER, J., and WALKER, S.J.

PER CURIAM: Reena Patel appeals from the district court's decision not to enforce a subpoena in a postdecree domestic relations motion hearing. Patel argues that the district court abused its discretion by not enforcing the subpoena, which ordered the medical files of her former husband's psychiatrist be provided to the court for an in camera inspection. She asks this court to remand the case to the district court for enforcement of the subpoena. Finding no error requiring reversal, we affirm.

1

Patel and Srinivas Yendru are divorced and have joint legal custody of their son. Their son, who was 10 years old when this issue arose, resides in a 45-55 percentage split with his parents, spending most of his time with his mother and spending every Tuesday afternoon and evening and every other Thursday through Monday with his father.

In July and August 2016, Yendru spent time at Pine Grove Health Center, a psychiatric facility in Mississippi. He sought treatment for anxiety, and upon his return he took a leave of absence from his job as a cardiovascular anesthesiologist. When he left for the facility in Mississippi, he informed Patel that he would be gone and could not take their son for his regular parenting time. Patel testified that Yendru returned after about a month, and she grew more concerned after their son told her that Yendru was not taking medication and that he had to coax Yendru to leave the house. As of the hearing, Yendru had neither returned to work nor did he have an estimate of when he would return to work.

In September 2016, Patel filed a motion asking for responses to questions about Yendru's leave of absence from his job, details about his diagnosis and treatment, and other information about Yendru's mental health. After a hearing on Patel's motion, the district court ordered defense counsel to obtain a review of Yendru's medical and therapy progress for anxiety, including diagnosis, prognosis, and whether it merits concern over Yendru's ability to parent their son. The parties stipulated to a protective order so that the information was to be reviewed only by counsel and the court before proceeding to any further actions.

Dr. Ralph Bharati, a board certified psychiatrist and Yendru's treating physician, submitted his report in the form of a letter in January 2017. His report said:

"I am writing this letter regarding Dr. Yendru. I have seen him and examined him a few times so far for his anxiety issues and some relationship problems and the recent stressful things that has been going on for the last several years about his divorce and child custody battle. I also reviewed his report from Pine Grove in Mississippi. I have talked to his aunt in the past, who raised him pretty much. I have also talked to his girlfriend Mandy in the past and obtained more of the collateral information. Based on my evaluation, Dr. Yendru is suffering from an anxiety disorder, not otherwise specified and a possible obsessive compulsive disorder. However, he is not psychotic. He is not paranoid. He does not have schizophrenia. He does not meet criteria to have schizophrenia. I do not believe that he is [a] danger to himself or his child. I do not have any hesitation for him having custody of his son and being with his son.

"Please feel free to call me should you need additional information on Dr. Yendru."

In May 2017, Patel moved to modify parenting time and to confirm the choice of their son's middle school. Patel's motion said that "[c]ertain recent events have caused [Patel] to question [Yendru's] ability to parent the child at this time." The issue was set for a hearing in August.

In preparation for the August 2017 hearing, Patel filed written discovery seeking information about the diagnosis, prognosis, and treatment of Yendru's mental health. Yendru timely answered but responded that the information was irrelevant.

Patel filed a notice of intent to issue a nonparty business records subpoena on Dr. Bharati. Yendru objected, claiming that the information sought was not relevant or material to any issues in the case, that the subpoena would not comply with the protective order issued in the case, and that Patel provided no basis for her request. The district court heard a motion on the issue and ruled in favor of Patel, ordering the subpoena to be issued but specified that all documents should be sent to the court directly for an in camera inspection before distributing any information to counsel. Dr. Bharati was personally served with the subpoena in June 2017.

3

As the August hearing approached, Dr. Bharati failed or refused to comply with the subpoena—he did not turn over the requested records and did not object to the subpoena. Three days before the hearing was set to begin, Yendru's counsel advised the district court and Patel's counsel about Dr. Bharati's noncompliance. She explained that Dr. Bharati suggested that he did not believe he had to comply with the business records subpoena and instead was waiting on a judge-signed order before responding.

With the subpoena issue unresolved, the evidentiary hearing took place on August 4, 2017. The parties spent much of the hearing discussing which middle school their son should attend but also discussed Patel's motion to reduce Yendru's parenting time based on his mental health. Before Dr. Bharati took the stand, Patel's counsel brought the unaddressed subpoena to the district court's attention and objected to him testifying. Dr. Bharati acknowledged that he did not produce the documents requested in the subpoena. However, he claimed that his attorneys and his professors during his medical residency program advised him not to release confidential doctor-patient information without an order signed by a judge and that he did not think this was an official subpoena. Dr. Bharati acknowledged that he filed no objection to the subpoena but said he believed federal law prohibited him from even revealing that Yendru is his patient without his consent absent a judge-signed order. Even though she had no other witnesses to testify to Yendru's mental health, Patel renewed her objection to Dr. Bharati testifying in the case because they would be unable to cross-examine him properly without first reviewing the files. Patel's counsel also asked the court to find Dr. Bharati in contempt for failing to provide the records under the subpoena. He requested that the district court recess the hearing long enough for the doctor to obtain the subpoenaed records from his office and return to the courtroom. Alternatively, Patel asked the court to presume that the information contained within the requested documents was adverse to Yendru's position since the records were not produced under the subpoena.

4

After hearing Patel's concerns, the district court again addressed Dr. Bharati. The court told him that, under Kansas law, valid subpoenas can be issued either by the clerk of the court or by a judge, so here he was served with a valid subpoena requiring his compliance. The court acknowledged that Dr. Bharati was told in the past that he was prohibited under HIPAA from releasing information unless it had been signed by a judge, but then informed him that, under state law, he was still obligated to at least raise an objection to the subpoena so that any concerns could be addressed at a hearing.

After instructing Dr. Bharati about his obligations under state law, the district court informed him that in the future, service of a subpoena required a response or an objection. The court, in its discretion, did not hold Dr. Bharati in contempt and found that Dr. Bharati's excuse that he was unsure of the subpoena's compliance with HIPAA was a valid excuse under K.S.A. 2018 Supp. 60-245(e). The court then denied Patel's request that Dr. Bharati be ordered to retrieve his files from his Wichita office for use at the hearing. The hearing proceeded, and the court allowed Dr. Bharati to testify over Patel's counsel's continued objections.

Although Dr. Bharati and Yendru were social acquaintances and had similar friends, Dr. Bharati described their relationship as a doctor-patient relationship. Dr. Bharati first saw Yendru as a patient in November 2015—Yendru contacted him and explained that he was under much stress, that he was unable to sleep, and that he was experiencing anxiety. The parties noted that the previous custody trial took place in September and October 2015—not long before Yendru sought Dr. Bharati's treatment. Dr. Bharati saw Yendru as a patient five times from November 2015 to February 2017.

Following their first meeting, Dr. Bharati diagnosed Yendru with adjustment disorder with anxiety, which he described as occurring when an individual has trouble coping with stressful life events such as a divorce or a stressful job. Dr. Bharati described Yendru's adjustment disorder and anxiety as transient or temporary and stemming from

5

relationship problems and his several-years-long divorce and ongoing custody battle. Dr. Bharati testified that he knew Yendru stopped working and acknowledged that an inability to go to work may be a symptom of mental illness but said he did not explore with Yendru why he had not gone back to work.

In December 2016 and January 2017, Dr. Bharati concluded that Yendru was "pretty much in remission with his anxiety disorder." Dr. Bharati described his last visit with Yendru in February 2017: "[W]e mutually decided that [Yendru] did not need any intervention, and I thought he was completely stable, and we decided to have visits only if necessary after that. And he was going to call me if there was any issue that I need to know." Although Dr. Bharati had seen Yendru interact with his son socially and he had not observed them one on one, he testified that he had no concerns about Yendru's ability to parent.

At the end of the hearing, the district court denied Patel's motion to modify Yendru's parenting time. In doing so, the district judge stated:

> "I understand Dr. Yendru had some personal issues, but what was elicited in the pleadings did not turn out to come out to fruition, as far as there being a danger to [his son] or anything else that was limited—that should have limited his parenting time. I mean, it just didn't come out at all. The inclusion of that in this case, I feel, prolonged and made more acrimonious the litigation."

The court found that Patel showed no material change of circumstances occurred and that modifying parenting time was not in the child's best interests. The judge further stated that he could

> "understand and empathize with a person in Dr. Yendru's position, who is in court a lot of times because Mom is trying to take away his already limited parenting time; and I can even understand why that may cause some extra stress that might require treatment.

6

". . . [J]ust as a dad, I cannot imagine a more trying or emotionally charged experience than having to fight and claw for every limited amount of parenting time that I get with my child.

"If that were the situation that I had to endure for all of these years that you guys have been enduring this litigation, it would be trying on me and I may need to seek extra help."

Patel subsequently filed a motion seeking reconsideration of the district court's refusal to enforce the business records subpoena on Dr. Bharati. At a hearing on the motion, Patel specified that she did not seek to reconsider the contempt issue but asked the court to have Dr. Bharati produce the records to the court for an in camera inspection. However, the court denied the motion, noting (1) that neither party showed any issues with parenting or anything that could be considered a material change in circumstances warranting a change in the parties' parenting time and (2) that the parties discussed presenting Dr. Bharati with a court order, but never presented one to the court for the judge to sign. The court acknowledged that Dr. Bharati should have objected to the subpoena as opposed to not complying, but it said that the failure to produce the medical records requested was justified.

Patel has timely appealed from the district court's rulings.

ANALYSIS

On appeal, Patel contends that the district court abused its discretion by not requiring Dr. Bharati to comply with the subpoena and provide his written medical files and records to the court for an in camera inspection.

When Dr. Bharati took the stand at the hearing, he testified over Patel's objections. Patel, through her counsel, requested that Dr. Bharati be held in contempt, that he obtain his file from his Wichita office before testifying, that he not be allowed to testify, that he

be stricken as a witness, and that the court find a presumption that the records contained information adverse to Yendru's position. On appeal, Patel claims that the district court's failure to enforce its subpoena was an abuse of discretion. She requests this court remand the case with instructions for the district court to enforce the subpoena, requiring Dr. Bharati submit Yendru's medical records to the district court for an in camera inspection. If the district court reviews the file and determines the records contained within it are relevant to Yendru's parenting time, Patel wants to be able to present that information and further argue the parenting time issues to the court.

Although Yendru's counsel said that she did not plan to call Dr. Bharati as an expert witness other than to say what Yendru's diagnosis was, the district court treated Dr. Bharati as an expert. Appellate courts review the admission or exclusion of opinion testimony for an abuse of discretion. *Manhattan Ice & Cold Storage v. City of Manhattan*, 294 Kan. 60, 70, 274 P.3d 609 (2012). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

In response to Patel's contentions on appeal, Yendru argues that the district court did not abuse its discretion for a number of reasons.

First, Patel knew of Dr. Bharati's noncompliance with the subpoena and his request for a judge-signed order before turning over any of Yendru's medical files. Three days before the hearing, Yendru's counsel advised Patel and the court of Dr. Bharati's concern that the subpoena was not signed by a judge. Patel knew of his noncompliance before the hearing, but did nothing to remedy it or to compel him to comply.

Next, Patel did not correctly request Dr. Bharati be held in contempt. The process for requesting a contempt finding is in K.S.A. 2018 Supp. 60-245(e) and K.S.A. 2018 Supp. 20-1204a.

"The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. Punishment for contempt should be in accordance with K.S.A. 20-1204, and amendments thereto. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of subsection (c)(3)(A)(ii)." K.S.A. 2018 Supp. 60-245(e).

That statute directs us to K.S.A. 2018 Supp. 20-1204a, which outlines the appropriate procedure and punishments for indirect contempt.

"(a) When an order in a civil action has been entered, the court that rendered the same may order a person alleged to be guilty of indirect contempt of such order to appear and show cause why such person should not be held in contempt if there is filed a motion requesting an order to appear and show cause which is accompanied by an affidavit specifically setting forth the facts constituting the alleged violation.

"(b) Except as provided in subsection (e), the order to appear and show cause shall be served upon the party allegedly in contempt by the sheriff or some other person appointed by the court for such purpose. Such order shall state the time and place where the person is to appear and shall be accompanied by a copy of the affidavit provided for in subsection (a). The court shall hear the matter at the time specified in the order, and upon proper showing, may extend the time so as to give the accused a reasonable opportunity to purge oneself of the contempt. If the court determines that a person is guilty of contempt such person shall be punished as the court shall direct.

"(c) If, after proper service of the order to appear and show cause, the person served shall not appear in court as ordered, or if the court finds at a hearing held on motion of a party to the civil action that the person allegedly in contempt is secreting oneself to avoid the process of the court, the court may issue a bench warrant commanding that the person be brought before the court to answer for contempt. When such person is brought before the court, the court shall proceed as provided in subsection

9

(b). The court may make such orders concerning the release of the person pending the hearing as the court deems proper.

"(d) The provisions of this section shall apply to both criminal and civil contempts, but in the case of a criminal contempt the court on its own motion may cause the motion and affidavit provided for in subsection (a) to be filed." K.S.A. 2018 Supp. 20-1204a.

Patel did none of these things. She filed no motion or affidavit against Dr. Bharati, even though she knew on August 1 that he was under the impression that he did not have to comply with the subpoena. Patel filed nothing else to compel Dr. Bharati to comply with the subpoena or to ask the court to find him in contempt.

Further, although Dr. Bharati did not file his objections to the subpoena as he should have, the district court took up the matter before determining whether he could testify. The court heard Dr. Bharati's objections at the hearing and, regardless of the accuracy of Dr. Bharati's beliefs, it found that Dr. Bharati provided a valid excuse under K.S.A. 2018 Supp. 60-245(e) regardless of his failure to follow proper procedure. That determination is within the district court's discretion, and Patel has not shown that this decision was an abuse of discretion.

The district court noted that Patel presented no other evidence that called Yendru's mental health and his ability to parent into question. Under the totality of the circumstances we cannot conclude that no reasonable person would take the view adopted by the district court. Therefore we hold that the district court did not abuse its discretion by handling Dr. Bharati's noncompliance in the way it chose to do. See *Wiles*, 302 Kan. at 74.

Affirmed.